RANDALL L. DORMANN, APPELLANT,
V. ELVIRA A. DORMANN, APPELLEE.
606 N.W.2d 837

Filed February 22, 2000.    No. A-99-140.

Edward D. Steenburg, of McQuillan, Steenburg & McQuillan, P.C., for appellant.

Robert M. Brenner, of Robert M. Brenner Law Office, for appellee.

HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.

INBODY, Judge.

## I. INTRODUCTION

Randall L. Dormann appeals from a decree entered by the district court for Garden County, Nebraska, dissolving his marriage to Elvira A. Dormann. Randall appeals those portions of the decree which relate to custody of the minor child, property division, alimony, and attorney fees.

## II. FACTS

Randall and Elvira were married on February 12, 1977. During the course of the marriage, two children were born: David, born May 20, 1977, and William, born May 14, 1981. At the time of the dissolution proceedings, David had reached the age of majority.

Shortly after the parties' marriage, the parties moved from New Mexico to OshKosh, Nebraska, so that Randall could work for Dormann Ranch, Inc., a closely held family corporation. When the parties first moved to Nebraska, they initially resided with Randall's father. The parties later moved into a residence owned by the corporation. When Randall first began working on the ranch for the corporation, his net monthly salary was $600. Randall also received, at no cost to him, additional benefits from the corporation, including a residence for the family to live in, payment of utilities, vehicles, car insurance, health insurance for the family, payment of Randall's Social Security taxes, fuel, and meat.

On August 28, 1996, Randall filed a petition for dissolution of the marriage in the Garden County District Court. On the same day, the parties entered into a property settlement agreement, which provided for distribution of the parties' property and custody of the minor child. At the time of the execution of the agreement, Randall paid Elvira $750 to assist her in obtaining an apartment and $2,500 as a property settlement. However, the property settlement agreement was never approved by the district court, and the parties did not follow the agreement.

Trial was held on this matter on May 18, 1998. At trial, Elvira testified that she learned that Randall wanted a divorce in August 1996 while she was in New Mexico taking care of her ill father. Elvira further testified that Randall told Elvira that "there was no need . . . to come back" to Nebraska. Elvira returned to Nebraska, but was not allowed to return to the marital home. Elvira stayed in a motel for a couple of days until she could locate an apartment to rent. Elvira testified that she had returned to the marital residence only once, when Randall permitted her to take a couch, a table, some plants, and her personal items from the residence.

Elvira further testified that William had remained on the ranch with Randall since the parties' separation and that she had no objections to him staying in Oshkosh and finishing his school there.

Elvira testified that during the marriage, she was the primary caregiver for the children and that she fixed the family meals, took care of the home, and did the laundry. In addition, Elvira testified that throughout the marriage, she did whatever she was asked to do around the ranch, including checking the cattle, fixing fences, cooking meals and taking the meals to the workers in the field, and picking up needed parts for the ranch.

Throughout the marriage, Elvira was also employed in a variety of positions, including working at a nursing home and operating a babysitting service out of her home. At the time of trial, Elvira was employed at Doug's Texaco, where she had been employed for approximately 9 years. Elvira testified that her responsibilities included pumping gas, operating the cash register, and doing some bookkeeping. At the time of trial, Elvira earned $7.25 an hour.

Randall testified that he had worked for the corporation as an employee for over 20 years. The evidence also showed that Randall was also the treasurer of the corporation and had access to the corporate bank accounts from which he could pay for various items, including supplies and his vacations. At the time of trial, Randall's net monthly salary was $758, and Randall continued to receive all the other benefits previously described above.

The evidence further disclosed that on the date of the parties' marriage, Randall owned 81 shares of stock in the corporation. During the marriage, Randall acquired an additional 35 shares, although it is not entirely clear from the record whether these shares were gifted to Randall or given to him as part of his employment benefits. At the time of trial, Randall owned approximately 7 percent of the corporation.

Evidence was also presented through financial records of the corporation that the corporation was valued at $1,495,841. Randall admitted that the valuation of the corporation was correct. Elvira testified that she did not have an opinion regarding the valuation of the corporation, because she was never involved in that "part of the business."

On January 13, 1999, the district court entered an order dissolving the marriage and awarding the parties joint custody of William, with primary physical custody to remain with Randall. Given the financial circumstances of the parties, the district court did not make an award of child support. Randall was further ordered to pay Elvira $250 per month in alimony for 36 months. The district court also divided the parties' marital property, including the value of 35 shares of Dormann Ranch stock that Randall received during the parties' marriage. The court ordered Randall to pay Elvira one-half of the value of the stock, or $17,451, to be paid within 120 days from the date of the decree. Finally, the court ordered Randall to pay Elvira $12,810 as equalization, to be paid in three yearly installments beginning June 1, 1999. On January 19, Randall filed a motion for new trial, which was denied. Randall timely filed this appeal.

### III. ASSIGNMENTS OF ERROR

On appeal, Randall asserts that the district court abused its discretion (1) in the division of the marital estate, (2) in awarding Randall and Elvira joint custody of William, (3) in awarding Elvira alimony, and (4) in awarding Elvira attorney fees.

### IV. STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial court. *Kricsfeld*

*v. Kricsfeld,* 8 Neb. App. 1, 588 N.W.2d 210 (1999); *Halouska v. Halouska,* 7 Neb. App. 730, 585 N.W.2d 490 (1998). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from acting, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Halouska v. Halouska, supra.*

## V. ANALYSIS

### 1. DIVISION OF MARITAL ESTATE

Randall asserts that the district court erred in determining the extent and division of the marital estate. Specifically, Randall argues that the district court erred when it included 35 shares of Dormann Ranch stock, a 1996 Firebird, and various items of personal property in the marital estate.

■ The division of a marital estate in a dissolution case is initially left to the discretion of the trial court and will be reviewed by an appellate court de novo on the record and affirmed absent an abuse of discretion. *Halouska v. Halouska, supra.* It has been repeatedly held in this jurisdiction that the marital estate is to be divided so that a spouse receives one-third to one-half. *Jirkovsky v. Jirkovsky,* 247 Neb. 141, 525 N.W.2d 615 (1995); *Halouska v. Halouska, supra.* However, property division is not subject to a rigid mathematical formula, but, rather, turns upon the facts and circumstances of each case in light of the statutory factors found in Neb. Rev. Stat. § 42-365 (Reissue 1998), and the ultimate test is always one of reasonableness. *Halouska v. Halouska, supra.* In a dissolution action, the court will consider all pertinent facts in reaching a property division that is just and equitable. *Id.*

### (a) Dormann Ranch Stock

First, we consider whether the district court erred by including 35 shares of Dormann Ranch stock that Randall received during the parties' marriage in the marital estate. In the decree of dissolution, the district court determined that the shares of stock acquired by Randall prior to the marriage were not marital property and therefore set off those shares to Randall. The

district court further determined that the shares of stock acquired by Randall during the marriage were "gifts to the marriage" and therefore should be included as marital property. The district court further determined that each share had a value of $997.23, or a total value of $34,903, and awarded each party one-half of the total value.

Randall, relying heavily on *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), argues that Elvira is not entitled to one-half of the stock Randall received during the parties' marriage because she failed to introduce evidence of the value of her contribution toward the improvements or operation of the corporation.

In *Van Newkirk*, the Nebraska Supreme Court stated:

> While we have not heretofore said in exact words how property acquired by inheritance or gift during the marriage should be considered, an examination of our previous decisions discloses that when awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate. . . . An exception to the rule is where both of the spouses have contributed to the improvement or operation of the property which one of the parties owned prior to the marriage or received by way of gift or inheritance, or the spouse not owning the property prior to the marriage or not receiving the inheritance or gift has significantly cared for the property during the marriage.

212 Neb. at 733, 325 N.W.2d at 834.

We believe that the facts of the instant case are nearly identical to the facts of *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986). In *Grace*, the husband worked for a corporation owned by his family. He owned 18.14 percent of the stock of the corporation, which shares were valued at trial at approximately $1,500,000. Part of the shares he owned prior to the marriage, and part of them he acquired after the marriage through inheritance or gift. During the 16-year marriage, the corporation provided the parties with a home, vehicles, gasoline, and meat, as well as a monthly salary of $1,500. As a result, the parties had

only a minimal marital estate. The Supreme Court performed an analysis based on *Van Newkirk v. Van Newkirk, supra*, and concluded that the wife had not contributed to the improvements or operation of the corporation so as to include any portion of it in the marital estate. That is, the *Van Newkirk* exception was not applicable. Nevertheless, the Supreme Court stated, "There are other considerations, however, beyond the exception set out in *Van Newkirk* . . . . The *Van Newkirk* rule itself does not purport to be an ironclad, rigid rule for all circumstances." *Grace v. Grace*, 221 Neb. at 699, 380 N.W.2d at 284. The Supreme Court continued, quoting *Matlock v. Matlock*, 205 Neb. 357, 287 N.W.2d 690 (1980), " 'How property, inherited by a party before or during the marriage, will be considered in determining division of property or award of alimony must depend upon the facts of the particular case and the equities involved.' " *Grace v. Grace*, 221 Neb. at 700, 380 N.W.2d at 284. The Supreme Court concluded that the stock should be considered in determining the division of property and awarded the wife "the sum of $100,000 as division of property under the particular facts of this case." *Id.* at 701, 380 N.W.2d at 285.

Like *Grace*, the facts of this case demonstrate that due to the nature of Randall's employment with the corporation, Randall and Elvira did not acquire a house, a car, or other property that a couple married 21 years would be expected to acquire. Thus, when considering the pertinent facts in reaching an award that is just and equitable, we find that the district court did not abuse its discretion by including the 35 shares of stock acquired by Randall during the marriage in the marital estate and awarding Elvira one-half of the value of the stock. Therefore, this assigned error is without merit.

### (b) 1996 Pontiac Firebird

■ Next, Randall contends that the district court erred in awarding Elvira the 1996 Firebird automobile because it was purchased after the parties' separation and was owned by the corporation. As a general rule, the marital estate includes only property accumulated and acquired during the marriage through the joint efforts of the parties. *Davidson v. Davidson*, 254 Neb.

656, 578 N.W.2d 848 (1998); *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). See *Shockley v. Shockley*, 251 Neb. 896, 560 N.W.2d 777 (1997).

In the instant case, the record discloses that the Firebird was acquired after the parties' separation, was titled in the name of the corporation, and was not paid for with marital assets. In addition, Elvira's testimony demonstrates that she was aware that the Firebird was acquired after the parties separated, that she had never made any payments on the Firebird, and that she knew it was registered to the corporation. Clearly, the Firebird is not marital property and should not have been included in the marital estate. Thus, we find that the district court abused its discretion by including the Firebird in the marital estate and awarding it to Elvira.

### (c) Household Items

Randall also contends that the district court erroneously included some household items, listed in exhibit 30, in the marital estate. Randall contends that some of the items listed in exhibit 30 were purchased by the corporation and should not have been included in the marital estate. The record reflects that exhibit 30 is a list of household goods prepared by Elvira which placed values on all the household items acquired by the parties during their 21-year marriage.

In the instant case, the record reflects that the parties provided conflicting testimony as to how these items were acquired and who paid for them. Elvira testified that the items listed in exhibit 30 were marital property. Elvira further testified that some of the items, such as the washer and dryer, were purchased by the corporation but that she considered them gifts. Randall testified that many of the items listed in exhibit 30 were purchased by the corporation for his use so long as he remained employed by the corporation.

In the decree of dissolution, the district court awarded each party the household goods in his or her possession. The court placed a value of $10,990 on the items in Randall's possession and a value of $1,000 on the goods in Elvira's possession.

Because the record contains conflicting testimony regarding how these items were acquired by the parties during their 21-year marriage, this court will consider and give weight to the

fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. See *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988). Therefore, we find that the district court did not abuse its discretion in determining the extent, value, or division of the marital assets contained in exhibit 30.

### (d) Payments Made During Separation

■ Finally, Randall contends that the district court erred in its division of the marital estate because it failed to address in the decree the $3,250 Randall paid Elvira during the parties' separation and the $1,491 Randall paid toward taxes. It appears that the district court determined the extent and value of the marital estate at the time of trial. It has long been held that the date upon which the marital estate is valued should be rationally related to the property composing the marital estate. See *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848 (1998). The district court's decision to determine the extent and value of the marital estate at the time of trial appears to be rationally related to the property composing the marital estate. Therefore, we cannot say that the district court abused its discretion.

### (e) Equalization

After removing the Firebird from the marital estate, the division of the balance of the marital estate is as follows:

| MARITAL ASSETS | RANDALL | ELVIRA |
|---|---|---|
| 35 Shares of Stock | $17,452 | $17,451 |
| Household Items | 10,990 | 1,000 |
| Farm Equipment | 15,000 | 0 |
| Life Insurance | 2,258 | 0 |
| Cash & Safety Deposit | 2,000 | 0 |
| Livestock | 300 | 0 |
| Flatbed Trailer | 1,500 | 0 |
| Camper | 75 | 0 |
| Boat, Motor, & Trailer | 6,500 | 0 |
| TOTAL ASSETS | $56,075 | $18,451 |
| TOTAL MARITAL ESTATE | | $74,526 |

Since the Firebird must be deleted from the marital estate, an additional amount must be paid by Randall to Elvira to equalize the marital estate. Therefore, we find that the decree should be modified to award Elvira $18,812 as equalization of the marital estate and order Randall to pay this amount to Elvira in three consecutive installments. The first installment of $6,271 is to be paid within 30 days after this mandate is issued, the second installment of $6,271 is to be paid June 1, 2000, and the third installment of $6,270 is to be paid June 1, 2001. These sums shall accrue interest at the legal rate for judgments 30 days from the date this mandate is issued until said judgment is paid in full.

## 2. CUSTODY

Randall next asserts that the district court erred in ordering that the parties have joint custody of William. Custody determinations are initially entrusted to the discretion of the trial judge and will be affirmed unless they constitute an abuse of that discretion. *Palmer v. Palmer*, 249 Neb. 814, 545 N.W.2d 751 (1996); *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996). A judicial abuse of discretion requires that the reasons or rulings of a trial judge be clearly untenable, unfairly depriving a litigant of a substantial right and a just result. *Pope v. Pope*, 251 Neb. 773, 559 N.W.2d 192 (1997).

Neb. Rev. Stat. § 42-364(5) (Reissue 1998) provides:

> After a hearing in open court, the court may place the custody of a minor child with both parents on a shared or joint custody basis when both parents agree to such an arrangement. In that event, each parent shall have equal rights to make decisions in the best interests of the minor child in his or her custody. The court may place a minor child in joint custody after conducting a hearing in open court and specifically finding that joint custody is in the best interests of the minor child regardless of any parental agreement or consent.

In the instant case, the parties did not agree to the joint custody arrangement, nor did the district court make a specific finding that joint custody was in the best interests of William as required by § 42-364(5). In addition, it has long been held that joint custody is not favored by the courts of this state and will

be reserved for only the rarest of cases. *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987). Thus, we find the district court abused its discretion by ordering that the parties have joint custody of William. Therefore, we reverse, and remand the cause for further proceedings on this issue.

### 3. ALIMONY

Next, Randall asserts that the district court erred in awarding Elvira alimony in the amount of $250 per month for 36 months.

A decision whether to award alimony must be made on the particular facts and equities of each individual case, and the court must consider all of the facts and equities, in addition to those facts specifically enumerated in § 42-365. *Halouska v. Halouska*, 7 Neb. App. 730, 585 N.W.2d 490 (1998). Section 42-365 provides in pertinent part:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

An appellate court is not inclined to disturb the trial court's award unless it is patently unfair on the record. *Priest v. Priest*, 251 Neb. 76, 554 N.W.2d 792 (1996); *Koubek v. Koubek*, 212 Neb. 2, 321 N.W.2d 55 (1982).

Based upon our de novo review of the record, we find that the parties were married for approximately 21 years and that given the unusual nature of Randall's employment, we cannot say that the district court's award of alimony in the amount of $250 per month for 36 months was an abuse of its discretion. Therefore, this assigned error is without merit.

### 4. ATTORNEY FEES

Finally, Randall asserts that the district court erred in ordering him to pay $3,241 toward Elvira's attorney fees. The

award of attorney fees in a dissolution action involves consideration of such factors as the nature of the case, the amount involved in the controversy, the services performed, the results obtained, the length of time required for preparation of the case, the skill devoted to preparation and presentation of the case, the novelty and difficulty of the questions raised, and the customary charges of the bar for similar services. *Davidson v. Davidson,* 254 Neb. 656, 578 N.W.2d 848 (1998); *Priest v. Priest, supra.*

In the instant case, evidence was presented that Elvira's attorney fees were increased due to Randall's resistance in supplying the financial records of the corporation which were under his exclusive control. Our de novo review of the record fails to disclose any abuse of discretion by the trial court in the awarding of $3,241 in attorney fees to Elvira. Therefore, the order regarding attorney fees is affirmed.

## VI. CONCLUSION

Having conducted a de novo review, we find that the district court did not abuse its discretion in including the 35 shares of Dormann Ranch stock in the marital estate and awarding one-half of the value to each party. Thus, we affirm the district court's order requiring Randall to pay Elvira $17,451 within 120 days from the date of the decree. However, we find that the district court did abuse its discretion in including the Firebird in the marital estate, and we modify the property portion of the decree to reflect that change. We further modify the decree to award Elvira $18,812, as equalization of the marital estate, and order Randall to pay this amount in accordance with the directions included in this opinion. We also find that the district court abused its discretion in ordering that the parties have joint custody of William, and we reverse, and remand the cause on this issue for further proceedings. Finally, we affirm the award of alimony and attorney fees.

AFFIRMED IN PART, AFFIRMED IN PART AS
MODIFIED, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.