TARA SPENCE, APPELLEE, V.
CHARLIE BUSH, APPELLANT.
703 N.W.2d 606

Filed September 6, 2005.    No. A-04-1487.

Peter Thew, of Thew Law Offices, for appellant.

Jeanelle S. Kleveland, of Kleveland Law Offices, for appellee.

IRWIN, SIEVERS, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Charlie Bush appeals the order of the district court for Lancaster County which granted sole custody of his minor children to their mother, Tara Spence. On appeal, Bush argues that the trial court erred in declining to grant joint custody. Pursuant to our authority under Neb. Ct. R. of Prac. 11B(1) (rev. 2005), we ordered the matter submitted without oral argument. On our de novo review, we reject Bush's argument that the law affords a presumption in favor of joint custody and we conclude that the trial court did not abuse its discretion. We therefore affirm.

## BACKGROUND

The parties, who never married, have three children together, ages 9, 5, and 4 at the time of trial. On May 6, 2004, Spence commenced an action against Bush in the district court to determine paternity of the children, to determine custody, and to obtain other collateral relief. At a trial on November 2, Bush admitted paternity, and the issues tried concerned only child custody, visitation, and support.

At trial, Spence requested sole custody, with visitation for Bush. She testified that the children had always lived with her. According to Spence, Bush had lived with her and the children from 1993 until 2002, when the parties separated. Since that time, the children had resided solely with Spence. Spence testified that while Bush lived with her, he helped with living expenses "[s]omewhat" or "a little." After separating from Spence, Bush had occasionally helped Spence with living expenses by buying groceries once and bringing clothing for the children. Shortly before trial, Bush purchased a coat and a pair of shoes for each of the three children. Spence admitted that Bush was a good father to the children, though "[h]e just seems to happen to tend to be on the wild side" and "[t]hings get wild" regardless of whether the children are present. Spence denied that Bush had ever harmed the children, and she believed that he loved them. Since the separation, Bush had watched the children overnight at his residence two or three times, and he had picked them up at daycare. Spence admitted that Bush had harmed her in front of the

children several times during the preceding 2 years. At the time of trial, Spence had a protection order against Bush. Spence admitted that Bush had had protection orders against her as well. Bush obtained one protection order after Spence broke Bush's car windows with a baseball bat. She claimed that she broke the windows in response to Bush's throwing a chair against a wall while the children were present. Spence admitted being extremely angry at the time and stated that as long as she is not in Bush's presence, she can remain calm. Spence was employed at the time of trial.

Bush requested that the parties have joint custody of the children. He testified that he began residing with Spence in 1992 or 1993 and moved out in February 2004. He stated that while he resided with Spence, he gave her money and she paid the expenses. Since February 2004, Bush had given Spence pocket money and had bought clothing and toys for the children as well as groceries for Spence's household. Bush stated that he had "filled the house with groceries three times." Bush admitted that the children love both parents. Bush testified that when the children visit him, they do not want to leave. Bush wanted the custody arrangement to be fair and did not want to deprive the children of time with either parent. Bush admitted violating a protection order Spence had against him. Bush testified that the children had seen him arguing with Spence and that the children had seen Spence act violently toward him, but he denied ever losing control in front of the children. Bush testified that Spence had broken his car windows in 2004 and threatened to kill him. In Bush's opinion, he tried to get along with Spence but Spence did not want to get along with him. He admitted having taken anger management classes in the past to learn "about carrying [him]self" but denied having anger control issues. At the time of trial, Bush was attending counseling and was employed.

The district court granted sole custody of the children to Spence, subject to reasonable visitation rights granted to Bush, and found that such arrangement was in the best interests of the children. The district court ordered Bush to pay child support, together with other collateral relief and other specifications of the order required by statute.

## ASSIGNMENT OF ERROR

Bush assigns that the district court erred in granting sole custody of the children to Spence.

## STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. In such de novo review, when the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *State on behalf of Pathammavong v. Pathammavong*, 268 Neb. 1, 679 N.W.2d 749 (2004).

## ANALYSIS

Bush argues that the trial court failed to adequately consider the best interests of the children. While an unwed mother is initially entitled to automatic custody of the child, the issue must ultimately be resolved on the basis of the fitness of the parents and the best interests of the child. *Id.* In filiation proceedings, the Nebraska Supreme Court has disregarded the fact that a child was born out of wedlock and has applied the standards for determination of custody set forth in Neb. Rev. Stat. § 42-364(2) (Reissue 2004). See *State on behalf of Pathammavong v. Pathammavong, supra.* Section 42-364(2) provides:

> In determining custody arrangements and the time to be spent with each parent, the court shall consider the best interests of the minor child which shall include, but not be limited to:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child; and

(d) Credible evidence of abuse inflicted on any family or household member. For purposes of this subdivision, abuse and family or household member shall have the meanings prescribed in section 42-903.

In determining a child's best interests under § 42-364, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child. *Marcovitz v. Rogers*, 267 Neb. 456, 675 N.W.2d 132 (2004).

The ultimate focus of Bush's argument is his contention that a "presumption [of joint custody] should be carried forward in custody matters." Brief for appellant at 6. In essence, Bush seeks to have us declare joint custody as the default arrangement in custody disputes. The Nebraska appellate courts have not explicitly addressed this precise argument.

■ Section 42-364(5) allows the trial court to order joint custody, stating:

After a hearing in open court, the court may place the custody of a minor child with both parents on a shared or joint custody basis when both parents agree to such an arrangement. In that event, each parent shall have equal rights to make decisions in the best interests of the minor child in his or her custody. The court may place a minor child in joint custody after conducting a hearing in open court and specifically finding that joint custody is in the best interests of the minor child regardless of any parental agreement or consent.

In *Kay v. Ludwig*, 12 Neb. App. 868, 686 N.W.2d 619 (2004), we recognized that a trial court may impose joint custody, even where the parties do not agree, if the court first conducts a

hearing and specifically finds that joint custody is in the best interests of the minor child.

Earlier, in *Dormann v. Dormann*, 8 Neb. App. 1049, 606 N.W.2d 837 (2000) (citing *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987)), we noted the longstanding rule that joint custody is not favored by the courts of this state and will be reserved for only the rarest of cases. In *Dormann v. Dormann, supra*, we reversed an award of joint custody where the parties did not agree to such an arrangement and where the trial court failed to make a specific finding, as required by § 42-364(5), that joint custody was in the best interests of the child. In *Kay v. Ludwig, supra*, we stated that under the current version of § 42-364, joint custody remains disfavored to the extent that if both parties do not agree, the court can award joint custody only if it holds a hearing and makes the required finding. There, we affirmed the trial court's joint custody award, where the court made the required finding and that finding was supported by the evidence.

Our conclusion in *Kay v. Ludwig, supra*, did not endorse a presumption in favor of joint custody. Although we recognized that the Parenting Act, Neb. Rev. Stat. §§ 43-2901 to 43-2919 (Reissue 2004), evidenced an attempt to foster participation of both parents of a separated family in raising their children, we did not discover in the preamble a legislative presumption in favor of joint custody. To the contrary, we reiterated that joint custody remains disfavored and emphasized that § 42-364 requires both a hearing and a finding concerning best interests before a trial court may award joint custody on its own motion.

It is the function of the Legislature through the enactment of statutes to declare what is the law and public policy of this state. *Clemens v. Harvey*, 247 Neb. 77, 525 N.W.2d 185 (1994). Bush's argument—contending that a presumption of joint custody should be adopted—must be addressed to the Legislature rather than to this court.

In the instant case, the record shows that Spence has cared for and supported the children since Bush left her residence, with minimal financial support, in kind or otherwise, from Bush. Spence admitted that Bush was a good father who had never harmed his children, and Bush admitted that the children loved

both of their parents. It is undisputed that the parties have had conflicts in the recent past. Each party had obtained protection orders against the other, and there was evidence, most of it conflicting, that each party had exhibited violent behavior in the presence of the other. In any event, the evidence strongly suggests that the parties would have difficulty carrying out the interactions inherent in a joint custody arrangement. Considering the conflicting evidence and the factors set forth above and giving weight to the fact that the trial court heard and observed the parties and apparently accepted one version of the facts rather than the other, we conclude that the trial court did not abuse its discretion in granting sole custody to Spence.

### CONCLUSION

For the foregoing reasons, we affirm the order of the district court.

AFFIRMED.