JUSTIN B. ZAHL, APPELLANT, V.
TRISHA A. ZAHL, APPELLEE.

736 N.W.2d 365

Filed July 20, 2007.    No. S-06-1123.

Claude E. Berreckman, Jr., of Berreckman & Berreckman, P.C., for appellant.

 

R. Bradley Dawson for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

HEAVICAN, C.J.
## NATURE OF CASE
This marital dissolution action presents issues related to an order of joint physical custody for the parties' minor child. When ordering joint custody under Neb. Rev. Stat. § 42-364(5) (Cum. Supp. 2006), a district court must specifically find that joint custody is in a child's best interests. The district court failed to make that finding in the dissolution decree. Further, because neither party had requested joint physical custody, the evidence presented at trial was limited to which parent should have sole custody. We conclude that under this circumstance, the court must conduct a separate hearing on joint physical custody before ordering such, and that its order must specifically find that joint physical custody is in the child's best interests.

## BACKGROUND
Justin B. Zahl and Trisha A. Zahl were married in July 2004. At the time of their marriage, Trisha was in a custody dispute concerning her older son from a previous marriage.

Justin and Trisha's son, Jace Zahl, was born 3 months premature in June 2004 and suffered from respiratory problems. Trisha was unemployed at the time of Jace's birth and did not begin working again until Jace was 8 months old. Trisha testified that she was Jace's primary caregiver during this time. Justin's job as a locomotive engineer on runs from North Platte, Nebraska, to Marysville, Kansas, required him to be absent approximately six times each month for approximately 36 hours per trip.

The parties separated in March 2005, shortly after Trisha returned to work. By that time, Trisha had obtained sole custody of her older son, who was 3 years older than Jace. For a while, Justin and Trisha informally agreed to share custody of Jace and, according to Trisha's testimony and the guardian ad litem's report, had approximately equal custody time. When

Justin was gone for his job, Trisha had custody and took Jace to daycare while she was working. Justin had custody when he was at home.

In May 2005, Justin filed a complaint for dissolution, seeking permanent custody and control of Jace. Trisha filed an answer and a counterclaim for dissolution, also seeking sole custody. Neither party requested joint custody. In June, the court granted Trisha's ex parte request for temporary custody. Trisha continued to allow Justin to have custody while she was at work when he was in town.

After a hearing in October 2005, however, the court awarded temporary custody to Justin. The court did not give specific reasons in its order for the change. Trisha was granted visitation on Tuesday nights and every other weekend. After Justin was awarded temporary custody, one or both of Justin's parents, who lived 12 to 15 miles away, would come to stay with Jace when Justin was called in to work so that Jace's schedule would not be disrupted and Jace would not have to be moved. Justin normally had 1½ hours' notice in which to report to work.

The guardian ad litem filed a report in December 2005 and later filed a supplemental report on July 14, 2006, approximately 1 week before trial. The guardian ad litem was originally concerned about Justin's having so many of his relatives care for Jace while he was absent for work, rather than allowing Jace to spend more time with Trisha. But in the supplemental report, the guardian ad litem concluded that with the assistance of his family, Justin had been able to provide stability and a close family setting in his own residence. Also, in the first report, the guardian ad litem suggested that joint custody might be a way for both parents to maintain an equal and substantive role in caring for Jace. However, in the second report, the guardian ad litem concluded that although joint custody would be the most beneficial to Jace if his parents cooperated better, they did not get along well enough to carry out such a plan. The guardian ad litem ultimately recommended that the court maintain custody with Justin.

By the time of trial in July 2006, Justin had been Jace's primary custodian for close to 10 months, and Jace was 25 months

old. Justin testified that he and Trisha did not get along or communicate well, and he admitted that he did not advise Trisha of Jace's medical appointments. But he maintained that he had cooperated with Trisha on visitation and had informed her of Jace's medical needs for visitation purposes.

Justin testified that he had worked about six trips per month to Kansas during the past 8 months. He also testified that he was usually able to make some of his trips coincide with Trisha's weekend visitation and overnight visitation during the week so that he had 4 to 6 days at a time to be at home with Jace. Justin also stated that if his parents should become unavailable, he would find another job within the railroad. He admitted that he thought it was more appropriate for his parents to be raising Jace than for Trisha to do so. Both of Justin's parents testified that Justin was a good father.

Trisha testified that she had just started a new job as a clerk for the sheriff's office, working 9 a.m. to 5 p.m., Monday through Friday. Dr. Lisa Jones, a psychologist hired by Trisha to evaluate Trisha's relationship with her children, as well as her parenting skills, testified at trial. Jones stated that she had observed Trisha with her sons for approximately 1½ hours in her office and during a sporting event when Trisha did not know she was being observed.

Jones had also reviewed or conducted additional testing. Jones opined that Trisha was a high-functioning parent who interacted affectionately and positively with her children and set appropriate limits. Jones also concluded that Jace was bonded to his older half brother. Trisha's friend, brother, and mother also testified that Trisha was close to her sons and parented appropriately and that her sons were bonded.

Trisha also testified that Justin had not been actively involved in Jace's care during the first 8 months of Jace's life. Trisha testified that after they separated, she and Justin had equal custody time until Justin began "laying off" of work and keeping Jace for several days at a time, prompting Trisha to seek a custody order. Trisha testified that when she had temporary custody, she continued to allow Justin to have about the same custody arrangement, but that after Justin obtained

temporary custody, he did not reciprocate and refused to talk to her about additional visitation time.

Trisha also stated that Justin did not keep her informed of Jace's medical appointments or details of his upbringing, including daycare arrangements. Trisha did not believe Justin would work to maintain her relationship with Jace if he were granted sole custody. Trisha stated that if she were granted custody, she would continue to give Justin custody while she was working if he were in town and also that she would cooperate on a joint custody schedule if definite custody times were outlined.

After trial, the court ordered the parties to submit proposals for joint custody arrangements and delayed determining custody until it could review the feasibility of the proposals. In this order, the court stated that a child's best interests were normally served by having one parent make decisions and having one place the child calls home, but that a child's confusion caused by multiple children from multiple marriages should be minimized. The court found that both parties were manipulative and did not get along except that they recognized the other as a fit parent and sought the best interests of Jace. "[A]lthough hesitant," the court stated that it would "overcome its reluctance to determine that joint custody is the proper remedy and allow the parties to submit a proposal in regard to a joint custody arrangement."

Justin's proposal offered to expand Trisha's every-other-weekend visitation to Monday morning and to give Trisha an opportunity to pick up Jace when Justin was called in to work. Trisha proposed that the parties each have custody for 2 weekdays and alternate Wednesdays and weekends on a weekly basis.

After reviewing proposals from the parties and the guardian ad litem's reports, the court ordered joint custody in the dissolution decree but did not adopt either party's proposal. Instead, it decreed that the parties would have alternate weeks of custody, from Friday to Friday. The dissolution decree was focused on specific custody arrangements, and the court did not discuss Jace's best interests. Justin timely appeals.

## ASSIGNMENTS OF ERROR

Justin assigns that the district court erred in ordering joint custody of Jace and failing to award Justin sole custody.

## STANDARD OF REVIEW

■ In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion.[1]

■ An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[2] A child custody determination that does not comport with statutory requisites is an abuse of discretion.[3]

■ Whether a decision conforms to the law is by definition a question of law.[4] Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[5]

## ANALYSIS

Justin contends that the court erred in ordering joint physical custody without first allowing the parties to present evidence on that issue. He argues that § 42-364(5) requires a custody hearing on the specific issue of joint custody and a

---

[1] See, *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006); *Gress v. Gress*, 271 Neb. 122, 710 N.W.2d 318 (2006); *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004).

[2] *Coral Prod. Corp. v. Central Resources, ante* p. 379, 730 N.W.2d 357 (2007).

[3] See, *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988); *Peterson v. Peterson*, 196 Neb. 328, 243 N.W.2d 51 (1976).

[4] See, *Robbins v. Neth, ante* p. 115, 728 N.W.2d 109 (2007); *Hauser v. Nebraska Police Stds. Adv. Council*, 269 Neb. 541, 694 N.W.2d 171 (2005).

[5] *In re Interest of Antonio S. & Priscilla S.*, 270 Neb. 792, 708 N.W.2d 614 (2005).

specific finding that joint custody is in a child's best interests. Alternatively, Justin contends that the court abused its discretion in ordering joint physical custody because the parties do not cooperate well enough to effectively parent Jace under this custody arrangement.

Trisha argues that § 42-364(5) only requires a hearing on custody, which occurred; that both parties had an opportunity to present evidence on custody; and that the district court implicitly concluded joint custody was in Jace's best interests. She contends that Justin has failed to preserve this issue for appeal because he submitted a joint custody proposal instead of refusing to comply and exercising his right to appeal. Trisha also contends the court did not err in concluding that joint custody was in Jace's best interests because (1) Justin's work schedule leaves him unavailable for emergencies, (2) Jace's relationship with his sibling should be fostered, and (3) Justin will not foster Jace's relationship with Trisha if he has sole custody.

## WAIVER OF ERROR

■ Justin has not failed to preserve this issue for appeal. The court's first order stated: "[T]he Court finds that the parties jointly, or separately, *shall submit* a proposal in regard to a joint custody arrangement within 15 days of today's date." We conclude that this statement constituted an order, not a "finding" as Trisha contends. It is true that a party who does not object to an error during trial fails to preserve that issue for appellate review.[6] But this rule has no application to a court's order following trial.

Justin could not have appealed from the court's first order because the court did not determine custody until it issued its second order.[7] Trisha cites no authority for her argument that Justin should have refused to comply with the court's order, and this court has never held that a party must risk a contempt

---

[6] See, e.g., *State v. Robinson*, 271 Neb. 698, 715 N.W.2d 531 (2006); *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003).

[7] See, e.g., *Pfeil v. State, ante* p. 12, 727 N.W.2d 214 (2007) (explaining final orders).

order or antagonize a trial judge in order to preserve an issue for appeal. Further, Justin's joint custody proposal did not offer joint physical custody.[8] Instead of proposing custody on a rotating basis, Justin proposed to expand Trisha's every-other-weekend visitation to Monday morning and to give Trisha an opportunity to pick up Jace when Justin was called in to work. Even if Justin's compliance with the court's order could constitute a waiver of his opposition to joint custody, Trisha's argument would still fail.

### Type of Hearing Required Under § 42-364(5)

Section 42-364(5) provides:

> After a hearing in open court, the court may place the custody of a minor child with both parents on a shared or joint custody basis when both parents agree to such an arrangement. In that event, each parent shall have equal rights to make decisions in the best interests of the minor child in his or her custody. The court may place a minor child in joint custody after conducting a hearing in open court and specifically finding that joint custody is in the best interests of the minor child regardless of any parental agreement or consent.

In *Robb v. Robb*,[9] this court stated that when the parties do not agree to joint custody, the last sentence of § 42-364(5) governs the issue. That sentence does not specify whether the court must hear evidence on the specific issue of joint custody before it may order such.

The Court of Appeals has held that § 42-364(5) "gives the trial court the authority to order joint custody even where *one of the parents* refuses to consent, if the court holds a hearing and specifically finds that joint custody is in the child's best interests."[10] But the issue in *Kay* was limited to joint legal

---

[8] See *Heesacker v. Heesacker*, 262 Neb. 179, 629 N.W.2d 558 (2001).

[9] *Robb v. Robb, supra* note 1.

[10] *Kay v. Ludwig*, 12 Neb. App. 868, 881, 686 N.W.2d 619, 629 (2004) (emphasis supplied).

custody,[11] and the court's holding indicates it was not dealing with a case in which neither party had requested joint custody. This court has also not decided a case in which the district court determined joint physical custody was in a child's best interests, despite no request from either parent for this custody arrangement.[12] We conclude that a trial court's authority under § 42-364(5) to order joint physical custody when the parties have not requested it must be exercised in a manner consistent with due process requirements.

The fundamental liberty interest of natural parents in the care, custody, and management of their child is afforded due process protection.[13] While the concept of due process defies precise definition, it embodies and requires fundamental fairness.[14] Generally, procedural due process requires parties whose rights are to be affected by a proceeding to be given timely notice, which is reasonably calculated to inform the person concerning the subject and issues involved in the proceeding; a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decisionmaker.[15]

When one of the parties in a marital dissolution action has requested joint physical custody of the parties' minor child, the other party has clear notice that this custody arrangement will be an issue at trial. But here, both parties sought sole custody in their pleadings, and except for Trisha's testimony at the end of the hearing that she would be willing

---

[11] See *Elsome v. Elsome*, 257 Neb. 889, 601 N.W.2d 537 (1999).

[12] Compare, *Robb v. Robb, supra* note 1; *Spence v. Bush*, 13 Neb. App. 890, 703 N.W.2d 606 (2005).

[13] *In re Interest of Mainor T. & Estela T.*, 267 Neb. 232, 674 N.W.2d 442 (2004).

[14] *Id.*

[15] See, *id.*; *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992), citing *Fuentes v. Shevin*, 407 U.S. 67, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972).

to cooperate if the court imposed joint custody, each party presented evidence to show that he or she would be the best sole custodian of Jace.

This court has held that joint physical custody must be reserved for those cases where, in the judgment of the trial court, the parents are of such maturity that the arrangement will not operate to allow the child to manipulate the parents or confuse the child's sense of direction,[16] and will provide a stable atmosphere for the child to adjust, rather than perpetuating turmoil or custodial wars.[17] Thus, the factual inquiry necessary to impose joint physical custody is substantially different from that required for making a sole custody determination. Under these facts, we cannot say that Justin received adequate notice that the court might order joint custody or an adequate opportunity to present evidence on this vital issue.

A court's determination of questions raised by the facts, but not presented in the pleadings, should not come at the expense of due process.[18] We have recognized that a trial court has an independent responsibility to determine questions of custody and visitation of minor children according to their best interests, which responsibility cannot be controlled by an agreement or stipulation of the parties.[19] In *Lautenschlager v. Lautenschlager*,[20] we held that the trial court was free to make an independent determination even when it was inconsistent with the parties' stipulations and the parties did not contest sole custody with the mother in their pleadings. But we also held in *Lautenschlager* that if the court disapproves of a custody stipulation, it must give the parties an opportunity to present

---

[16] *Trimble v. Trimble*, 218 Neb. 118, 352 N.W.2d 599 (1984).

[17] *Moninger v. Moninger*, 202 Neb. 494, 276 N.W.2d 100 (1979).

[18] See *Spanish Oaks v. Hy-Vee*, 265 Neb. 133, 655 N.W.2d 390 (2003).

[19] See, § 42-364(1); *Deacon v. Deacon*, 207 Neb. 193, 297 N.W.2d 757 (1980), *disapproved on other grounds, Gibilisco v. Gibilisco*, 263 Neb. 27, 637 N.W.2d 898 (2002); *Lautenschlager v. Lautenschlager*, 201 Neb. 741, 272 N.W.2d 40 (1978).

[20] *Lautenschlager v. Lautenschlager, supra* note 19.

evidence relevant to a complete reexamination of the question of custody.[21]

██ We conclude that fundamental fairness requires that we apply the rule from *Lautenschlager* to this circumstance. Therefore, we hold that when a trial court determines at a general custody hearing that joint physical custody is, or may be, in a child's best interests, but neither party has requested this custody arrangement, the court must give the parties an opportunity to present evidence on the issue before imposing joint custody.

██ In addition, the district court abused its discretion to order joint custody by failing to specifically find that joint physical custody was in Jace's best interests as required in the last sentence of § 42-364(5). Although Trisha contends that the court implicitly made this finding, implicit findings cannot satisfy procedural rules requiring explicit findings.[22] In *Torres v. Aulick Leasing*,[23] we reversed a judgment of the Workers' Compensation Court for failing to make explicit findings as required by Workers' Comp. Ct. R. of Proc. 11 (1998), despite the review panel's conclusion that the factual findings were implicit in the order. We explained that "[w]ithout such findings, there can be no meaningful appellate review."[24] The same reasoning applies here.

## CONCLUSION

We conclude that the district court erred in ordering joint physical custody when both parties sought sole custody and did not agree to joint custody. Fundamental fairness requires that the parties be given notice that a court is considering

---

[21] *Id.* See, also, *Strohmeyer v. Strohmeyer*, 183 Conn. 353, 439 A.2d 367 (1981); *In re Marriage of Rubey v. Vannett*, No. A05-310, 2007 WL 1412749 (Minn. App. May 15, 2007) (unpublished opinion). Compare, *In re Custody of Ayala*, 344 Ill. App. 3d 574, 800 N.E.2d 524, 279 Ill. Dec. 456 (2003); *Van Schaik v. Van Schaik*, 90 Md. App. 725, 603 A.2d 908 (1992); *Mabus v. Mabus*, 890 So. 2d 806 (Miss. 2003).

[22] See *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000).

[23] *Id.*

[24] *Id.* at 863-64, 606 N.W.2d at 102.

joint physical custody and an opportunity to litigate the issues specific to that custody arrangement before it is imposed upon them. We further conclude that the court abused its discretion by failing to specifically find that joint physical custody was in the child's best interests as required by § 42-364(5). Accordingly, we reverse the district court's judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.