IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

WOEHL V. RYLE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMIE LYNN WOEHL, FORMERLY KNOWN AS JAMIE LYNN RYLE, APPELLANT,
V.
MICHAEL PAUL RYLE, APPELLEE.

Filed November 4, 2014.    No. A-14-010.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part, and in part reversed.

Avis R. Andrews for appellant.

No appearance for appellee.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

This appeal concerns the custodial arrangement for the minor child of Jamie Lynn Woehl (Jamie) and Michael Paul Ryle. The district court originally granted Michael sole custody of the child. Subsequently, Jamie filed an application to modify this arrangement. In her application, she requested that she be awarded sole custody. After two separate hearings, the district court entered an order modifying the original custodial arrangement by awarding Jamie and Michael joint legal custody. However, the court ordered that physical custody was to remain with Michael. Jamie appeals from the court's order. On appeal, Jamie argues that the court erred in failing to award her physical custody of the child. Because we find that Jamie did not prove a material change in circumstances had occurred since the entry of the original custody order, we affirm the decision of the district court to deny her request to alter physical custody. For this same reason, we reverse the district court's decision to grant the parties joint legal custody.

## II. BACKGROUND

These proceedings involve Ashley Ryle, born in 2000. Jamie is Ashley's biological mother, and Michael is Ashley's biological father. At the time of Ashley's birth, Jamie and Michael were married, but they subsequently divorced in May 2002. The decree of dissolution did not address custody of Ashley, because when the decree was entered, Ashley was under the jurisdiction of the juvenile court. As a result, the original order concerning custody of Ashley was entered in November 2009.

The November 2009 custody order awarded Michael physical and legal custody of Ashley, subject to Jamie's visitation time. This visitation time included every other weekend, every Thursday evening, and 5 weeks during the summer.

In March 2012, just over 2 years after the November 2009 custody order was entered, Jamie filed an application to modify the custodial arrangement. In the application, she alleged that a material change of circumstances had occurred since the entry of the custody order. Specifically, she alleged that the parties have struggled to communicate since Michael was awarded custody, that Michael's family situation has changed to the detriment of Ashley, and that Ashley desires to reside with Jamie. Jamie requested that the court enter an order

> modifying the [original custody order] to grant [her] legal custody of the minor child, for a Parenting Plan that meets the present circumstances of the parties and the needs of the child, that child support and other financial matters relating to the child be reviewed and modified as appropriate, for her costs and attorney fees expended herein, and for such other and further relief in the premises as shall be just and equitable.

In September 2012, a hearing was held on Jamie's application to modify custody. At the hearing, Jamie was represented by counsel and Michael appeared pro se. Both Jamie and Michael testified about their relationships with Ashley and about their current circumstances.

Jamie testified that at the time of the hearing, she was residing in Fremont, Nebraska, at her mother's home with her two sons, who were ages 8 years and 17 months. Jamie had resided with her mother for a majority of the time since the entry of the original custody order in November 2009. However, she had briefly moved to Tennessee to seek out employment during the summer of 2010. Jamie was currently unemployed, but she was enrolled in classes at a community college in an effort to complete a degree in nursing. Jamie testified that she supported herself and her two sons with unemployment payments, child support payments, and financial assistance from her mother.

Jamie indicated that she is very close with Ashley. She testified that she and Ashley often spend one-on-one time together and that they do a lot of activities together, including horse showing, attending church, and scrapbooking. In addition, Jamie testified that she is "actively involved" in Ashley's education and that she regularly speaks with Ashley's teachers and attends parent-teacher conferences. Ashley also has a positive relationship with her half brothers, and they all enjoy playing together when Ashley is visiting their home.

Jamie expressed concerns about Michael's parenting of Ashley. She indicated that Michael has not actively facilitated her relationship with Ashley. Jamie testified that when she telephones Ashley during the week, oftentimes no one will answer and no one will return her calls. In addition, she has previously been denied her scheduled visitation time and has not been

timely and properly informed of Ashley's medical appointments. Jamie testified that Michael and Michael's family have spoken negatively about her when Ashley was present. Jamie also testified that Michael is not supportive of Ashley's attending counseling even though Ashley is still dealing with the parties' divorce and other family issues. Michael failed to enroll Ashley in a summer school program even though she needs help with her math skills, failed to support Ashley in her participation with school band, and made negative comments about Ashley's weight to Ashley.

Michael testified that, at the time of the hearing, he was residing in an apartment in the Omaha, Nebraska, area with Ashley; his wife, Annette Ryle; and his and Annette's 3-year-old daughter. Michael had only been residing in this residence for approximately 1 month, and prior to that time, he and his family had moved residences approximately five times since the entry of the original custody order in November 2009. Such moves included living with Michael's parents for 1 month, living with Annette's parents for 1 month, and living at a hotel for 1½ weeks.

Michael testified that his recent housing instability was due, in large part, to foster children that he and Annette had taken into their home shortly after the entry of the November 2009 custody order. The foster children were described as "distant relatives" of Annette who Michael accepted into his family because he did not want to see them be separated into different foster homes. However, Michael admitted that permitting the children to stay in his home was a mistake. Apparently, the children had serious behavioral problems that affected the whole family. In particular, Ashley and her foster siblings would sometimes fight with each other, including some physical violence. Ultimately, the foster children were removed from Michael's home for the safety of Michael and his entire family approximately 1½ months prior to the time of the hearing.

Michael testified that he was currently unemployed as a result of being diagnosed with vertigo in September 2011 and being unable to continue to work in the maintenance field. He indicated that he is applying for jobs in different fields and that, in the meantime, he is enrolled in school to complete a mechanical design program. Michael testified that he has a good relationship with Ashley and that he is trying hard to be a good parent to her. In addition, he denied many of Jamie's claims that he has not been supportive of Ashley. Specifically, he testified that he tries to be accommodating to Jamie and to her visitation requests, that he has tried to inform Jamie of Ashley's medical appointments, and that he has never called Ashley "fat" or put her on a special diet. Michael testified that he has taken Ashley to counseling and that he is active in her education. He indicated that Ashley has been attending the same elementary school since November 2009, that he knows her teachers, and that he typically attends parent-teacher conferences. In addition, Michael testified that Ashley plays well with her half sister and that Ashley has an "okay" relationship with Annette.

In addition to Jamie's and Michael's testimony, the court also heard the testimony of Ashley. Ashley generally testified that she has a good relationship with both of her parents. In fact, she specifically testified that she does not necessarily feel closer to one of her parents than the other. She indicated that she gets along "fine" with Jamie, but also admitted that she sometimes does not want to talk to Jamie when she telephones during the week. Ashley also indicated that she is happy that her foster siblings have moved out of Michael's house. She

testified that she does not have a great relationship with Annette and that she feels her half sister gets more attention than she does at Michael's home.

After the September 2012 hearing, the district court entered a temporary order. In the order, the court awarded "temporary custody" of Ashley to Michael subject to Jamie's visitation time, which included every other weekend, an overnight visit every Wednesday, and regular telephone contact to include four mandatory calls per week. The court also ordered the parties to participate in family counseling and ordered Michael to complete a parenting class which addressed the specific issues presented by teenagers. Finally, the court ordered further hearings to check the status and progress of the family.

A subsequent hearing was held in August 2013. At this hearing, the court heard the testimony of Dr. Linda Hunter, a licensed clinical psychologist; Jamie; and Michael.

Dr. Hunter testified that in February 2013, Jamie, Michael, and Ashley initiated family therapy. However, these group therapy sessions were quickly discontinued because Jamie and Michael were unable to get along with each other. Dr. Hunter recommended that Ashley continue seeing her for individual therapy and that each of the parties seek out their own individual therapists to address anger issues. Dr. Hunter hoped that, at some point, family therapy would be possible. However, family therapy had not yet occurred. Jamie had participated in some individual therapy, but by the time of the August 2013 hearing, Michael had not yet done so.

Dr. Hunter testified that she had seen Ashley approximately 10 times since February 2013. She described Ashley as a "typical teenager" in that, over the course of their time together, Ashley had expressed various opinions about each of her parents and about her desires concerning where she wanted to live. Sometimes, Ashley would report that she had a close relationship with Michael, and other times, she would report that they were having "issues" with each other. Dr. Hunter noted that most of these issues were apparently disciplinary in nature. Dr. Hunter described Ashley's relationship with Jamie as "stable."

Jamie testified that she had recently moved to an apartment in Gretna, Nebraska, in order to be closer to Ashley. In addition, she had recently acquired a job at a local pizza restaurant. She was earning $8 an hour and working approximately 35 hours per week. She continued to pursue her nursing degree; however, she was not currently enrolled in any classes. Jamie testified that she continued to support Ashley in all of her activities and interests. She also testified that she and Michael's relationship had not improved, despite her efforts and her time in individual therapy. Other evidence at trial revealed that Jamie had contributed to the problems in the relationship, when she instructed Ashley not to tell Michael that Jamie and her sons had moved to Gretna until after the hearing date.

Michael testified that he and his family were still living in the same apartment and that he was still attending school. In fact, he was scheduled to graduate during the spring of 2014 with a degree in mechanical design. He testified that he has encouraged Ashley to pursue a variety of activities and interests. He admitted that he had not participated in individual therapy. He testified that he had been unable to find an appropriate, qualified therapist, but that he had sought out the counsel of a religious advisor.

After the August 2013 hearing, the district court entered an order of modification. In this order, the court modified the November 2009 custody order to award Jamie and Michael joint

legal custody of Ashley. However, the court noted that Michael should have "the final say regarding [Ashley's] education, religious upbringing[,] and medical needs." The court ordered that physical custody of Ashley should remain with Michael subject to Jamie's visitation time, which included every other weekend and one overnight visit during the week throughout the summer and "whenever possible during the school year." The court also ordered that Michael should begin participating in individual therapy within 30 days and that both parties should participate in Ashley's ongoing therapy with Dr. Hunter.

Jamie appeals from the court's modification order here.

## III. ASSIGNMENTS OF ERROR

On appeal, Jamie assigns seven errors. However, in the argument section of her brief, she asserts only that the district court erred in failing to grant her physical custody of Ashley. Because this is the only error Jamie both assigns and argues, it is the only one of her assertions that we will address in our analysis below. See *Schnell v. Schnell*, 12 Neb. App. 321, 673 N.W.2d 578 (2003) (alleged errors must be specifically assigned and specifically argued in order to be considered by appellate court).

## IV. STANDARD OF REVIEW

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrains from acting, and the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002).

## V. ANALYSIS

On appeal, Jamie challenges the district court's failure to modify the November 2009 custody order by awarding her physical custody of Ashley. Specifically, she argues that such a modification is warranted because there has been a material change of circumstances since the entry of the original custody order and because the modification would be in Ashley's best interests. Upon our de novo review of the record, we find that Jamie failed to prove that there has been a material change in circumstances since the entry of the November 2009 custody order which would warrant any modification to the original custodial arrangement. Accordingly, we affirm the decision of the district court denying Jamie's request for physical custody of Ashley.

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Vogel v. Vogel, supra*. The party seeking modification of child custody bears the burden of showing a material change in circumstances. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). A material change in circumstances means the occurrence of

something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id*.

In her application for modification, Jamie alleged that there had been a material change of circumstances since the entry of the November 2009 custody order in that (1) she and Michael have struggled to communicate and cooperate since Michael was awarded custody, (2) Michael's family situation has changed to the detriment of Ashley, and (3) Ashley desires to reside with Jamie. Upon our careful review of the record, we are unable to find sufficient evidentiary support to substantiate any of Jamie's assertions about the material changes in circumstances in the parties' lives.

There was a great deal of evidence about the parties' failure to communicate and cooperate with each other and about their inability to get along at all. However, this hostile relationship is not a change in circumstances since the November 2009 custody order. In that order, the district court went to great lengths to describe the parties' poor relationship. In fact, it appears from that order that one of the reasons that Michael was awarded custody of Ashley was Jamie's complete failure to communicate and cooperate with Michael and her failure to facilitate visitations between Michael and Ashley. The court stated: "The parties are clearly antagonistic toward each other. However, it appeared to the Court that [Michael] would be more amenable to providing for contact between [Ashley and Jamie] than the willingness of [Jamie] to provide the same contact between [Ashley and Michael]."

Moreover, there was nothing in the record which suggested that Michael's animosity toward Jamie had affected her visitation time or her contact with Ashley on a regular basis. Jamie saw Ashley at least once a week and the two of them had cultivated a good relationship with each other. And, although Jamie testified that she was unable to speak with Ashley on the telephone every day, there was evidence that this was Ashley's choice, not Michael's. Essentially, Jamie failed to present sufficient evidence to prove that the parties' poor communication and cooperation was a change in circumstances or, to the extent that it was a change, that it was a material change in circumstances.

There was evidence presented that Michael's family circumstances had changed since the entry of the November 2009 custody order. Michael testified that shortly after November 2009, he and his wife, Annette, had accepted responsibility for foster children who suffered from behavioral and emotional problems. These foster children remained in Michael's home until shortly before the initial modification hearing in September 2012. During their stay in Michael's home, they were disruptive to everyone, including Ashley. In addition, they caused some instability in the family's housing. Michael admitted that permitting the children to stay with him for such an extended period of time was a mistake.

While we applaud Michael's efforts to provide these foster children a home, we agree that he should have recognized that keeping the foster children in his home was not in Ashley's best interests. However, it is clear that by the time of the initial modification hearing, this situation was no longer an issue because the foster children had been moved to a different home. After their removal, Michael and his family established a more stable residence and appeared to return to a more normal routine. As such, the presence of the foster children in Michael's home was not a material change in circumstances at the time of the modification order.

In her brief on appeal, Jamie asserts that another change in Michael's family life which had detrimentally affected Ashley was his marriage to Annette. Jamie asserted that Ashley "was not able to relate" to Annette. Brief for appellant at 27. This assertion is not supported by the evidence presented at the modification hearings. Ashley did testify that she struggled in her relationship with Annette and that Ashley felt like her 3-year-old half sister received more attention than she did at Michael's house. And, Michael testified that Ashley's relationship with Annette was "okay" and that it could probably be improved upon. However, that was all of the evidence presented on this subject. There was no evidence that Annette mistreated Ashley. In fact, there was some suggestion that Ashley's frustration with Annette came more from her being upset that Annette had to spend more time with her younger child than it was from any sort of true animosity. Either way, the evidence that was presented regarding Ashley and Annette's relationship certainly did not demonstrate a material change in circumstances warranting a change in custody.

Finally, there was no evidence that Ashley had indicated a true and unwavering desire to reside with Jamie. In fact, Ashley's therapist, Dr. Hunter, testified that Ashley's opinion on this subject depended on the day that you asked her. And, Ashley, herself, testified that she did not feel closer to one parent over the other. Accordingly, Jamie's assertion about Ashley's preferences is without merit.

Based upon our review of the evidence presented at the modification hearings, we find that Jamie did not present sufficient evidence to support her allegations of a material change in circumstances which has occurred since the entry of the November 2009 custody order and which would warrant a change in custody. Additionally, in our de novo review, we are unable to independently discern any specific evidence which would constitute a material change in circumstances outside of Jamie's specific allegations. Accordingly, because there was not sufficient evidence of a material change in circumstances, we must affirm the order of the district court which denied Jamie's request to alter the November 2009 custody order by awarding her physical custody of Ashley.

Given our finding that Jamie did not prove that a material change in circumstances had occurred since the entry of the November 2009 order, we are compelled to also address that portion of the district court's order which modified Ashley's legal custody by awarding the parties' joint legal custody. Although neither party has raised this issue on appeal, we find that the court's modification constitutes plain error, and we reverse.

Although an appellate court ordinarily considers only those errors assigned and discussed in the briefs, the appellate court may, at its option, notice plain error. *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012); *Cesar C. v. Alicia L.*, 281 Neb. 979, 800 N.W.2d 249 (2011). Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Id.*

In the district court's order of modification, it modified the original custodial arrangement such that it awarded the parties joint legal custody of Ashley. However, as we discussed above, before custody of a minor child can be modified, there must be a showing that a material change of circumstances has occurred since the prior custody order. See *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). And, we have found that Jamie failed to demonstrate

that such a material change in circumstances has occurred. As a result, there was no basis for any modification of the custodial arrangement laid out in the November 2009 custody order.

Moreover, we note that neither party requested joint legal custody and no agreement was reached between the parties with respect to joint custody. At the modification hearings, the parties both testified about their inability to communicate and cooperate with each other. Accordingly, it would seem that even if there had been a material change in circumstances, an award of joint legal custody would not be appropriate in this situation. See Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2012). See, also, *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007).

Upon our de novo review of the record, we find that the district court committed plain error in its decision to modify the November 2009 custody order by awarding the parties' joint legal custody of Ashley. We, therefore, reverse that portion of the order.

## VI. CONCLUSION

Because we find that Jamie did not prove a material change in circumstances had occurred since the entry of the original custody order, we affirm the decision of the district court to deny her request to modify physical custody. For this same reason, we reverse the district court's decision to grant the parties joint legal custody. Ashley's physical and legal custody should remain with Michael.

AFFIRMED IN PART, AND IN PART REVERSED.