IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


BEJMUK V. BEJMUK


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


ALEXANDER P. BEJMUK II, APPELLEE,

V.

SARA ANN RIVEDAL BEJMUK, APPELLANT.


Filed June 23, 2015.    No. A-14-766.


Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Affirmed in part, and in part reversed and remanded with directions.

Stephanie W. Milone for appellant.

Jill K. Harker, of JK Harker, P.C., L.L.O., for appellee.


IRWIN, INBODY, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Sara Ann Rivedal Bejmuk appeals from a decree of dissolution entered by the district court, which decree dissolved her common law marriage to Alexander P. Bejmuk II (referred to in the record and throughout this opinion as "Peter"). The decree also divided the parties' marital assets and debts, awarded the parties joint physical custody of their two minor children, awarded Peter sole legal custody of the children, and ordered Sara to pay child support. On appeal, Sara asserts that the district court erred in its decisions regarding custody of the children, in admitting into evidence a partial parenting plan agreed to by the parties, in its calculation of her child support obligation, in allocating the income tax dependency exemption between the parties; in ordering a psychological evaluation of the parties' oldest child, and in failing to award her any attorney fees.

- 1 -

Upon our review of the record, we conclude that the district court abused its discretion in its calculation of Sara's child support obligation; however, we affirm in all other respects.

## II. BACKGROUND

Sara and Peter entered into a valid common law marriage in the state of Colorado in 2004. Two children were born of the marriage. The oldest child was born in April 2004, and the youngest child was born in February 2008.

Throughout the majority of the parties' marriage, Sara has been the primary financial provider for the family. She is currently self-employed as a business analyst contractor and has a stable employment contract. Sara has also been extremely involved in the children's lives and has a close relationship with both children.

Peter had a more unstable, fluctuating employment history during the parties' marriage. He has had numerous jobs, but has never kept any one job for a long period of time. Currently, he is employed full-time at a company called Regal Awards. Peter has also been extremely involved in the children's lives. In fact, when the children were very young, Peter was their primary caregiver while Sara worked outside of the home. However, Peter's relationship with the parties' oldest child has become strained over the years.

On December 23, 2011, Sara filed a complaint for dissolution of marriage. In the complaint, Sara specifically asked that the parties' marriage be dissolved, that their marital assets and debts be equitably divided; that she be awarded sole custody of the minor children; and that she be awarded child support.

On May 7, 2012, prior to Peter filing an answer to Sara's complaint, the district court entered a temporary order concerning custody of the parties' children pending a trial. In the order, the court awarded Sara sole physical custody of the children subject to Peter's parenting time, awarded the parties joint legal custody of the children, and ordered Peter to pay child support in the amount of $275 per month.

On November 13, 2012, Peter filed an answer and counterclaim. Therein, Peter asked that the parties' marriage be dissolved, that their marital assets and debts be equitably divided; that he be awarded sole custody of the minor children; and that he be awarded child support, alimony, and attorney fees.

On July 26, 2013, trial was held. The trial continued on September 20 and October 23, 2013. At trial, both parties testified concerning their work histories, their relationships with the children, their contributions to the marriage, their present finances, their mental health, and their marital property.

After the trial, the district court entered a decree of dissolution. In the decree, the court awarded the parties joint legal and physical custody of the children, ordered Sara to pay child support in the amount of $360 per month, allocated the income tax dependency exemptions between the parties such that each party was permitted to claim one of the children on annual income tax returns, ordered the parties to arrange for a full psychological evaluation of their oldest child, and ordered each party to be responsible for their own attorney fees.

After the court entered the decree of dissolution, Sara filed a motion to alter or amend the judgment. In the motion, she alleged that the district court erred in awarding the parties joint legal and physical custody of the children when neither of the parties had requested joint custody

because she did not have proper notice that the court was contemplating such a custody arrangement. She also alleged that the court erred in calculating her child support obligation because it had failed to account for the cost she incurs for the children's health insurance premiums; in allocating the income tax dependency exemptions between the parties; in approving the partial parenting plan mediated by the parties and incorporating its provisions into the decree; and in requiring the parties to obtain a psychological evaluation of their oldest child. Sara also requested that the court award her attorney fees.

The district court granted a new hearing as to the issue of joint custody. In addition, the court stated, "Since there will be an additional hearing, the Court will also allow [Sara's] request to receive evidence as to the other issues [raised in her motion to alter or amend the judgment,] which are health insurance premium, tax dependency exemption when there is one child, Court's use of Partial Parenting Plan, psychological evaluation of the child, and attorney fee." The new hearing was held in March 2014. At this hearing, both Sara and Peter testified again regarding the issues raised in Sara's motion to alter or amend the judgment.

Following the new hearing, the court entered an order modifying the decree of dissolution only as to custody of the parties' minor children. The court continued its award of joint physical custody, but awarded Peter sole legal custody. The court stated that all other provisions of the decree "shall remain in full force and effect."

Sara appeals here.

## III. ASSIGNMENTS OF ERROR

On appeal, Sara assigns six errors. She asserts that the district court erred in (1) awarding the parties joint physical custody and Peter sole legal custody of their two minor children, (2) admitting into evidence a partial parenting plan agreed to by the parties during mediation, (3) calculating her child support obligation without including a credit for the cost of the children's health insurance, (4) allocating the income tax dependency exemptions such that each party is permitted to claim one child on annual tax returns, (5) ordering that the parties' oldest child submit to a psychological evaluation, and (6) failing to award her any attorney fees.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

In an action for the dissolution of marriage, an appellate court reviews de novo on the record the trial court's determinations of custody, child support, property division, alimony, and attorney fees; these determinations, however, are initially entrusted to the trial court's discretion and will normally be affirmed absent an abuse of that discretion. *Mamot v. Mamot*, 283 Neb. 659, 813 N.W.2d 440 (2012); *Reed v. Reed*, 277 Neb. 391, 763 N.W.2d 686 (2009); *Sitz v. Sitz*, 275 Neb. 832, 749 N.W.2d 470 (2008); *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). An abuse of discretion occurs when the trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Adams v. Adams*, 13 Neb. App. 276, 691 N.W.2d 541 (2005).

## 2. CUSTODY

In the decree of dissolution, the district court found, "It is in the best interests of the minor children that legal and physical custody of the minor children be awarded to the parties jointly. . . ." Then, after the hearing on Sara's motion to alter or amend the decree, the court modified the custody order to award Peter sole legal custody. The award of joint physical custody of the children remained unchanged.

Sara challenges the court's custody order. She asserts that the court erred in awarding Peter sole legal custody of the children. She also asserts that the court erred in awarding the parties joint physical custody of the children. She argues that she should be awarded sole legal and physical custody.

Before we address Sara's assertions, we examine the relevant considerations in decisions about custody.

When custody of minor children is an issue in a proceeding to dissolve the marriage of the children's parents, custody is determined by parental fitness and the children's best interests. *Klimek v. Klimek*, 18 Neb. App. 82, 775 N.W.2d 444 (2009). The best interests of a child require a parenting arrangement "for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress." Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012). Section 42-2923(6) further provides:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family or household member . . . ; and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

The district court is also guided by Neb. Rev. Stat. § 42-364(3) (Cum. Supp. 2012) when determining a child custody award. This section provides:

> Custody of a minor child may be placed with both parents on a joint legal custody or joint physical custody basis, or both, (a) when both parents agree to such an arrangement in the parenting plan and the court determines that such an arrangement is in the best interests of the child or (b) if the court specifically finds, after a hearing in open court, that joint physical custody or joint legal custody, or both, is in the best interests of the minor child regardless of any parental agreement or consent.

We now turn to Sara's specific arguments on appeal.

## (a) Joint Physical Custody

Sara argues that the court erred in awarding the parties' joint physical custody of the children. She asserts that she should have been awarded sole physical custody because she has been the children's primary caregiver and because of the strained relationship between Peter and the parties' oldest child. Upon our review, we cannot say that the court abused its discretion in its award of joint physical custody.

At trial Sara testified that she was the children's primary caregiver and that she was a good, stable parent who was very involved in the children's lives. She testified that Peter was immature, that he did not have any stability in his life, and that he was not a good caregiver to the children. In fact, Sara testified that she did not believe Peter was capable of caring for the children for a full 24-hour period because, in her opinion, he was not even able to take care of himself. Sara also testified that Peter had been "mean" to their oldest child and that, as a result, he had a very strained relationship with the child. Since the parties' separation, Sara struggles to get the child to go on visits with Peter and, often, the child chooses to stay with her instead of going with Peter.

Contrary to Sara's testimony, Peter presented evidence that he was a loving parent who was also very involved in his children's lives. There was evidence presented that Peter had been the children's primary caregiver during at least a portion of the parties' marriage because Sara worked outside of the home. Peter testified that he could be strict with the children, but he was not ever mean to them. He believed that his relationship with his oldest child was strained, at least in part, because Sara was poisoning the child against him. At the very least, Peter believed that Sara was not doing enough to encourage the child's relationship with Peter. Peter indicated that when the child would attend visitations, everyone would have fun and he and the child got along just fine. Peter testified that while he wanted sole physical custody of the children, he recognized that a joint custody arrangement would be in the children's best interests. He indicated a willingness to work with Sara for the benefit of the children despite Sara's failure to cooperate with him.

Faced with this conflicting evidence about the parties' parenting abilities and their relationships with the children, the court determined that a joint custody arrangement would be in the children's best interests. From this decision, we can assume that the court found Peter's testimony to be somewhat more credible than Sara's testimony and we defer to the trial court's determinations of witness' credibility. See *McGuire v. McGuire*, 11 Neb. App. 433, 652 N.W.2d 293 (2002) (where the evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another). In light of Peter's testimony, we conclude that the district court did not err in awarding the parties' joint physical custody of the minor children.

## (b) Legal Custody

Sara argues that the court erred in awarding Peter sole legal custody of the children. She asserts that she should have been awarded sole legal custody because she is a more stable parent and because she makes better decisions than Peter. Upon our review, we cannot say that the court abused its discretion in awarding sole legal custody to Peter.

As we discussed above, the parties presented conflicting evidence about their parenting abilities and did not agree on a custodial arrangement. From our reading of the parties' testimony,

it is apparent that they do not get along well with each other. In the court's order granting Peter sole legal custody of the children, it found that Sara was responsible for many of the parties' issues with each other and with the children. In addition, it found that Peter had shown himself to be cooperative and willing to work with Sara. Specifically, the court found:

> Each parent has positive benefits for the minor children. However, the attitude of [Sara] towards [Peter], her manipulation of the children against [Peter], her lack of cooperation and communication with [Peter] are not in the best interests of the children. This court still believes that equal possession time with the parties is in the best interest of the minor children, however, [Peter] should have primary and final decision making of the children so that there is less conflict. [Peter] has always tried to cooperate and exhibited a willingness to cooperate with [Sara] and do what is in the best interest of the minor children. [Peter] has not tried to manipulate or turn the children against [Sara] as she has done against [Peter]. To the contrary, [Sara] has not exhibited the necessary cooperation or the willingness to cooperate.

Given our reading of the record and given our deference to the trial court's decisions about witness' credibility, we cannot say that the court erred in its factual findings. And, given these findings, we cannot say that the court erred in placing legal custody of the children with Peter. Because the parties do not communicate well or make decisions together, one party has to have the authority to make decisions for the children. Peter expressed a willingness to at least consult with Sara on major decisions that need to be made. Sara very clearly did not have that same attitude towards Peter.

We affirm the court's custody order in its entirety.

### 3. ADMISSION OF "PARTIAL" PARENTING PLAN

At trial, Peter offered into evidence Exhibit 16, which was a document entitled "Bejmuk Partial Parenting Plan." The parties' testimony at trial revealed that the document was an unsigned agreement entered into by the parties after pre-trial mediation. Essentially, the document indicates that the parties came to an agreement about holiday visitation with their children; vacation time with their children; telephone access to the children when the children were with the other parent; and communication between the parties. The document specifically indicates that the parties were not able to come to an agreement on legal and physical custody of the children; weekly parenting time schedules; or whether either parent was allowed to take the children on an out-of-town vacation.

Sara objected to the admission of Exhibit 16 at trial. She argued that the partial parenting plan should not be considered by the district court because the results of the mediation session between the parties were confidential, the partial parenting plan did not comply with local court rules, and only a complete parenting plan which disposed of all custodial decisions could be received into evidence. The court overruled Sara's objection and the partial parenting plan was received into evidence.

After Exhibit 16 was received into evidence, Peter testified that he believed some modifications or clarifications were necessary to make the parties' agreements more workable. For

example, he asked that the court alter the parties' agreement as to vacation time with the children if the court awarded the parties joint physical custody in order to make the provision more clear.

Sara testified that she never liked the partial parenting plan.

In the decree, the court indicated:

> The Court has reviewed the parties' unsigned mediated agreement provided to the Court as their Partial Parenting Plan pursuant to the statutes of Chapter 43, Article 29 and Chapter 25, Article 29 of the Nebraska Revised Statutes and finds that it is in the best interests of the minor children and that it should be approved as modified by the Court in this Decree.

The court also indicated:

> The parties shall abide by the Partial Parenting Plan they negotiated . . . that details parents' scheduled parenting times for holidays, summers, and special occasions with the following modification: each calendar year, each parent shall take his or her vacation parenting time during his or her alternate week of possession with the minor children. If the vacationing parent takes the minor children out of town, the other parent will forgo that Wednesday visitation or possession time.

On appeal, Sara asserts that the district court abused its discretion in admitting the partial parenting plan into evidence and adopting it into the decree. Specifically, she asserts that the partial parenting plan should not have been received into evidence because she was not given proper notice that she had limited time to object to the plan pursuant to local court rules and because Peter asked for modifications to the plan. Upon our review, we conclude that Sara's assertions do not have merit.

Neb. Rev. Stat. § 43-2929(1) (Cum. Supp. 2012) provides details on the creation of a parenting plan:

> In any proceeding in which parenting functions for a child are at issue . . . a parenting plan shall be developed and shall be approved by the court. Court rule may provide for the parenting plan to be developed by the parties or their counsel, a court conciliation program, an approved mediation center, or a private mediator. When a parenting plan has not been developed and submitted to the court, the court shall create the parenting plan in accordance with the Parenting Act.

Pursuant to the language of § 43-2929(1), in the district court of Douglas County, local court rules provide further direction about the creation of a parenting plan. Of particular relevance to this appeal is Rule of Dist. Ct. of Fourth Jud. Dist. 4-3D(10) (Rule 4-3D(10)). That provision of the rules provides, in part:

> If the parties reach an agreement through mediation . . . the agreement shall be reduced to writing. The mediator . . . shall provide copies of the agreement to the parties and their attorneys, together with a notice informing the parties and their attorneys of their right to express their objections to the written agreement. The notice shall inform the parties and their attorneys that they have twenty-one (21) days from the date of the notice to notify the mediator . . . of any written objections to the terms of the agreement. . . . All matters not specifically objected to shall be deemed final.

Sara argues that the partial parenting plan mediated by her and Peter was not in compliance with Rule 4-3D(10) and that, as a result, the plan should not have been admitted into evidence and adopted by the court. She asserts that she did not receive proper notice from the parties' mediator that she only had 21 days to object upon receiving a written version of the plan. However, contrary to Sara's assertions, there was evidence presented at trial that Sara had received proper notice.

Sara testified that she had received a written copy of the plan from the parties' mediator and that after receiving that copy, she and Peter had at least one discussion about its terms. Peter testified that both he and Sara had received an email from the mediator. Attached to that email was a written copy of the partial parenting plan and included in the email were instructions notifying the parties that they had 21 days to object to the plan. Peter testified that he knew that Sara received that email because she was included as a recipient of that email and because he and Sara discussed the plan after the email was sent. At that time, Sara indicated to him that she wanted to object to the plan. However, she never filed such an objection.

Given this testimony, we find that there was sufficient evidence to demonstrate that Sara was given notice that she only had 21 days to object upon receiving the written version of the partial parenting plan. Knowing of the time limitations for making objections to the plan, Sara still failed to formally object to any portion of the plan. As a result, pursuant to the language of Rule 4-3D(10), the plan became final and was admissible at the dissolution trial.

Sara also argues that the partial parenting plan should not have been admitted into evidence or adopted by the court because at trial, Peter testified that he wanted the court to modify certain provisions in the plan. Sara argues that this testimony proves that the parties did not intend for the plan to be a final agreement. Sara's argument has no merit.

As we discussed above, because neither party filed formal objections to the plan within the 21-day time period prescribed by Rule 4-3D(10), the partial parenting plan became final despite the intent of the parties. Moreover, while we do not comment on the correctness of the court's decision to allow Peter to testify concerning his requested modifications to the plan, we find that even if such testimony should not have been permitted, this error would not have changed the admissibility of the partial parenting plan. Finally, we note that, ultimately, the court did not modify any of the provisions of the parenting plan except to clarify that in light of the joint custody order, the parties must take their annual week-long vacation with the children during their own parenting time. This was not a substantive change to the plan.

We conclude that Exhibit 16, the partial parenting plan, complied with local court rules and was properly admitted into evidence and considered by the district court. Sara's assertions to the contrary have no merit.

## 4. CHILD SUPPORT CALCULATION

In the decree of dissolution, the court ordered Sara to pay $360 per month in child support. In calculating the amount of child support owed by Sara, the court included a credit of $250 for Sara's payment of health insurance premiums for the children. In her motion to alter or amend the decree, Sara argued that the court erred in its calculation of her child support obligation because the court did not take into account "the actual cost" she incurs for the children's monthly health insurance premiums. The district court permitted Sara to present evidence on this topic at the hearing in March 2014.

At the hearing, Sara offered evidence which showed that her monthly health insurance premium totaled $634.86. Of that amount, $332.54 was for her health insurance and $302.32 was for the children's health insurance. Therefore, each month, Sara pays an additional $151.16 for each child's health insurance.

In the order entered after the March 2014 hearing, the district court specifically indicated, "The child support obligation of [Sara] shall remain as set forth in the Decree of Dissolution of Marriage." On appeal, Sara argues that the court erred in not amending its child support order to provide her with a credit for the actual amount she spends for the children's monthly health insurance premiums. Upon our review of the record, we conclude that Sara's assertion has merit.

The Nebraska Child Support Guidelines provide that, in regard to health insurance, "The parent paying the premium receives a credit against his or her share of the monthly support." Neb. Ct. R. § 4-215(A). However, "[t]he parent requesting an adjustment for health insurance premiums must submit proof of the cost for health insurance coverage of the child(ren). *Id*. Essentially, the parent requesting a credit for health insurance premiums must show that he or she has incurred an increased cost to maintain the coverage for the children over what it would cost to insure himself or herself. *Noonan v. Noonan*, 261 Neb. 552, 624 N.W.2d 314 (2001).

At the March 2014 hearing, Sara presented evidence to demonstrate that she paid an increased cost of $302.32 per month to maintain health insurance for the two children. Despite this evidence, the district court only gave Sara a credit for $250 when calculating her child support obligation. The court failed to provide any explanation for the deviation between the actual amount Sara pays for the children's health insurance premiums and the amount of credit it granted to her. Accordingly, we find that the district court abused its discretion in calculating Sara's child support obligation without giving her credit for the actual amount of health insurance premiums she pays for the children. We reverse the child support order and remand with directions for the district court to recalculate Sara's child support obligation, giving her credit for the $302.32 she pays for the children's monthly health insurance premiums.

### 5. ALLOCATION OF INCOME TAX DEPENDENCY EXEMPTIONS

In the decree of dissolution, the district court allocated the income tax dependency exemptions as follows:

> As long as [Sara] is current in her child support obligations as of December 31 of the tax year in which she is allowed by this Decree to claim any child as a deduction for state and federal income taxes, [Sara] shall have the right to claim [the parties' youngest child] as a dependent for income tax purposes annually. [Peter] shall have the right to claim [the parties' oldest child] as a dependent for income tax purposes. When there is only one child, the parties shall alternate claiming [that child] as a dependent for income tax purposes with [Sara] claiming [the child] in even numbered years and [Peter] claiming [the child] in odd numbered years. Each party shall execute and provide the other with IRS Form 8332 and any other documents or forms necessary to enable the other party to claim any of the children as a dependent by January 15th of the year after the tax year for which the party is allowed to take the exemption.

On appeal, Sara argues that the district court erred in allocating the income tax dependency exemptions between the parties. Specifically, she argues that federal law prohibits a state court from allocating the dependency exemptions in a decree of dissolution. We affirm the order of the district court.

In a recent Nebraska Supreme Court case, it reiterated its long-standing position concerning the allocation of income tax dependency exemptions in dissolution of marriage cases. In *Anderson v. Anderson*, 290 Neb. 530, 540-41, 861 N.W.2d 113, 122 (2015), the court stated,

> A tax dependency exemption is an economic benefit nearly identical to an award of child support or alimony. In general, the custodial parent is presumptively entitled to the federal tax exemption for a dependent child. But a court may exercise its equitable powers and order the custodial parent to execute a waiver of his or her right to claim the tax exemption for a dependent child if the situation of the parties so requires.

Given this recent and explicit directive of the Supreme Court, we conclude that the district court had the authority to allocate the dependency exemptions between the parties and to order the parties to execute a waiver of their rights in this regard. Sara's arguments to the contrary are without merit.

### 6. PSYCHOLOGICAL EVALUATION FOR OLDEST CHILD

At trial and at the hearing on Sara's motion to alter or amend the decree, Peter presented evidence that their oldest child is struggling with some behavioral issues that Peter believes are at least partially a result of the child's feelings about the parties' divorce. Peter testified that he would like the child to get counselling and that he would even be willing to pay for that counselling. Sara testified to the contrary. She indicated that the child was not struggling with the divorce in any way and that any behavioral problems the child may have had actually improved after the parties' separation. She testified that she had the child evaluated prior to the trial and that he had been diagnosed with an attention deficit disorder which was being treated with medication. The report generated from this evaluation recommended that the child participate in counselling, however, it does not appear that the child was enrolled in any counselling at the time of the trial. Sara indicated that she did not believe that any further mental health intervention was necessary.

In the decree, the district court ordered the parties to "arrange for a full psychological evaluation of [the child] to address the problems he is experiencing that were discussed at trial." The court also indicated that a new hearing should be scheduled for as soon as possible after the evaluation so that the court could review the findings and recommendations of the psychologist. On appeal, Sara asserts that the district court abused its discretion in ordering the parties to arrange for the psychological evaluation. Specifically, she argues that neither party requested such an evaluation in their original pleadings and that, as a result, the court did not have the authority to enter such an order. Upon our review, we cannot say that the district court abused its discretion in this regard.

The record reveals that the parties strongly disagree about whether their oldest child would benefit from counselling or any other mental health intervention. While Sara testified that she did not believe any more intervention was necessary after the child was placed on medication to

improve his concentration and attention span, Peter disagreed. Peter testified that he had observed numerous behavioral problems in the recent past, and felt that those problems would be best addressed through counselling. Faced with this conflicting testimony, the district court ordered the child to participate in a psychological evaluation in order to determine what, if any, future mental health intervention was necessary.

We cannot say that the court's order was an abuse of discretion. The parties placed decisions about the child's best interests squarely within the discretion of the district court when they asked the court to develop a parenting plan and to rule on such issues as legal and physical custody of the child. Accordingly, the court had the authority to order the parties to arrange for the psychological evaluation so that the court could be fully informed about the child's mental health status. Sara's assertions to the contrary are without merit.

### 7. ATTORNEY FEES

In the parties' initial pleadings, they each requested sole legal and physical custody of the children. However, in the temporary order entered by the district court, it awarded the parties joint legal custody and awarded Sara sole physical custody pending the trial. Then, at trial, Peter testified that while he was opposed to Sara having sole custody of the children, that he would be amenable to a custody arrangement where the parties divided physical custody such that the children alternated homes every week. Presumably, Peter was indicating that he would not be opposed to a joint custody arrangement. Apparently, Peter had also indicated this preference to Sara prior to the trial, when he responded to her Interrogatories.

As we discussed above, in the decree, the court awarded the parties joint physical and legal custody. Sara contested this award in her motion to alter or amend the decree. Specifically, she asserted that she did not have notice that a joint custody order was being contemplated by the district court and that, as a result, she was entitled to another hearing to present specific evidence about why she was opposed to joint custody. Also in her motion to alter or amend the decree, Sara requested that the court award her attorney fees for the additional and "unnecessary" time and money she had to expend because the court awarded the parties' joint custody of the children when neither of the parties requested a joint custody arrangement in their initial pleadings and when she did not have notice that such a custody order was possible. The court did not award Sara with any attorney fees.

On appeal, Sara asserts that the district court erred in failing to award her with attorney fees. Upon our review, we conclude that the district court did not abuse its discretion in not awarding Sara any attorney fees.

In a marital dissolution action, an award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Bussell v. Bussell*, 21 Neb. App. 280, 837 N.W.2d 840 (2013). An appellate court reviews such an award de novo on the record; however, the award of attorney fees is initially entrusted to the discretion of the trial court. See *id.*

Sara's assertion that the court should have awarded her with attorney fees for the amount of money she expended in filing her motion to alter or amend and in participating in the resulting hearing on her motion, is based on her belief that the district court erred in ordering a joint custody

arrangement when neither of the parties requested such an arrangement in their original pleadings and when she did not have any notice that such an arrangement was within the court's contemplation. She asserts that during the trial, Peter changed his mind about his request for sole custody when he testified that he wanted to divide physical custody such that each party had the children one-half of the time. She also asserts that this request was a surprise to her and that she was not prepared to offer evidence in opposition to a joint custody arrangement. She further asserts that, as a result of her surprise, a post-trial hearing had to be held concerning joint custody and that this hearing caused her to incur additional legal expenses.

Sara's general assertion that a party must be afforded with notice that the court is considering a joint custody arrangement before such an arrangement can be entered is correct. See *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007). However, this is not a situation where Sara had absolutely no notice that a joint custody order was possible. In the temporary order entered by the court prior to trial, the court awarded the parties' joint legal custody of the children. Such an order should have provided some notice that the court would consider incorporating that joint custody order into the decree. Sara's counsel indicated at trial that Peter had previously stated his desire for a joint physical custody arrangement when he responded to Sara's Interrogatories. Because Sara knew that the court had entered joint legal custody on a temporary basis and because she knew prior to trial that Peter was requesting to evenly divide the parties' time with the children, she should have had some inclination that an award of joint custody was at least possible and an awareness that she should address her opposition to such an arrangement during the trial.

We do recognize that the district court did grant Sara's request for an additional hearing so that Sara could present evidence as to the joint custody arrangement. We do not discuss the propriety or the necessity of such a post-trial hearing here. However, we do note that the hearing encompassed other topics beyond joint custody. In her motion to alter or amend, Sara requested that the court reconsider other portions of the decree, including the children's health insurance premiums, the allocation of income tax dependency exemptions, and the court-ordered psychological evaluation for her oldest child. The parties presented evidence about all of these topics at the second hearing.

In light of the specific circumstances of this case, we cannot say that the district court abused its discretion in failing to award Sara with any of the attorney fees she incurred in filing her motion to alter or amend or in participating in the resulting hearing. The record reveals that prior to the original trial, Sara had some notice that a joint custody arrangement was possible. In addition, the post-trial hearing Sara requested encompassed more than just custody of the parties' children. Thus, contrary to Sara's assertions, we do not find that the post-trial hearing was necessitated solely by Peter changing his mind about wanting joint custody, nor do we find that his actions forced Sara to incur additional attorney fees.

## V. CONCLUSION

Upon our review, we find that the district court abused its discretion in calculating Sara's child support obligation without giving her credit for the actual amount of health insurance premiums she pays for the children. We reverse the child support order and remand with directions for the district court to recalculate Sara's child support obligation, giving her credit for the $302.32

she pays for the children's monthly health insurance premiums. We affirm the decree of dissolution in all other respects.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.