IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COUGHLIN V. GRAF

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JAMES E. COUGHLIN, APPELLANT,

V.

MALLORI GRAF, APPELLEE.

Filed March 10, 2020.    No. A-19-431.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Justin A. Quinn for appellant.

No appearance for appellee.

MOORE, Chief Judge, and ARTERBURN and WELCH, Judges.

WELCH, Judge.

INTRODUCTION

James E. Coughlin appeals the decision of the Douglas County District Court granting him and Mallori Graf joint physical custody of the parties' minor son. Coughlin contends that the district court erred in excluding testimony regarding the parties' disagreements about their son's medical care and in failing to award him sole physical custody. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

Coughlin and Graf are the parents of James E. Coughlin, Jr., nicknamed "Bird," who was born in November 2010. When the parties first filed for a custody determination, they were residing in Iowa and brought an action in an Iowa district court. In August 2012, the Iowa district court entered an order regarding child custody.

- 1 -

In the summer of 2016, Graf attempted suicide. A few months later, in November 2016, an Iowa court modified the custody order to incorporate the parties' stipulated agreement including that Coughlin and Graf were to share physical custody of Bird subject to certain psychological reporting requirements by Graf. The court's order provided that Coughlin was to have overnight parenting time with Bird every Sunday, Monday, and Tuesday, and that Graf was to have overnight parenting time every Wednesday, Thursday, and Friday, with the parties alternating Saturday evenings. The court also granted the parties joint legal custody of Bird, with Coughlin having final determination on the "selection of physicians, church membership or school enrollment." Because of Graf's attempted suicide, the court order provided:

[T]herefore [the parties] agree that [Graf] shall provide [Coughlin] with a letter from her treating therapist, physician or psychiatrist confirming her compliance with her mental health needs, every three months for the next two years. Assuming that no additional incidents occur, and such appropriate letters are provided, the requirement of further verification shall be suspended at the end of the 24 months. . . . The parties agree and stipulate that further mental health crises are not in the best interest of the child and that any further and similar incidents by [Graf] shall immediately cause the child to be surrendered into the temporary sole physical care of [Coughlin]. Furthermore, the parties agree and stipulate that such additional or similar incidents shall be a sufficient material and substantial change of circumstances to warrant the permanent change of primary physical care of the child to that of [Coughlin].

Subsequently, both parties relocated to Nebraska, and in August 2017, Graf filed a verified complaint to register the action and requested to modify the Iowa order. In response, Coughlin filed a counterclaim to modify. Eventually, Graf's complaint to modify was dismissed leaving only Coughlin's counterclaim to modify and a trial thereon was held in January 2019. At trial, the district court heard testimony from Mary Ellen Christ-Anderson, who was Graf's mental health counselor; Coughlin; and Graf.

MARY ELLEN CHRIST-ANDERSON

Christ-Anderson testified that she served as Graf's mental health counselor but last treated her in November 2017. She testified that from the summer of 2016 to November 2017, Graf consistently attended therapy sessions and did not present with suicidal thoughts during that period. She testified that, consistent with the court's order, she issued letters to Coughlin in May, September, and October 2017, wherein she attested to Graf's mental state during those periods. In Christ-Anderson's October 2017 letter, she summarized that to her knowledge, Graf had been compliant with her therapy and had not had a mental health crisis in over 15 months. Christ-Anderson indicated that, in July 2017, Graf informed her that she was concerned Coughlin would hurt Bird and that Bird had told Coughlin, "Mom says I'm not safe at Dad's."

Coughlin testified he graduated from Briar Cliff College with a degree in criminal justice. After college, Coughlin joined the Army National Guard, eventually working full time in the armory in Council Bluffs, Iowa.

Coughlin and his wife, Nina, reside in a five-bedroom home with their 2-year-old son and Nina's two children from a previous relationship. One of Nina's children is the same age, and attends the same school, as Bird. Coughlin testified Bird has his own room, but on some nights, he would rather stay in the same room as his stepbrother. Coughlin testified he attended all of Bird's parent-teacher conferences and that Bird's report cards indicated he was doing "[g]reat. He's proficient or advanced in all aspects, and especially advanced in mathematics." Coughlin also testified that Bird is participating in extracurricular activities including CCD and baseball. Bird attends CCD at the same parish as his stepsiblings and is on the same baseball team as his stepbrother and "love[s] it." Coughlin also testified that Bird has close relationships with his stepsiblings, explaining they get along "great" and "play just about the whole time that they're together" playing on the hoverboard, bike, scooters, games, and in the snow. Coughlin also testified Bird assists in changing his younger half brother's diapers and plays with his younger half brother. Coughlin testified that his stepchildren have the same parenting schedule as Bird and that it was important to him to keep the children on the same schedule in order to strengthen the children's relationships.

Coughlin also testified Graf's two suicide attempts caused him to worry about Bird's safety. He further testified that, although he was to receive court-ordered mental health updates from Graf, the last mental health update he received was in December 2018.

Coughlin also testified regarding the tension between himself and Graf and stated that it is better if he and Graf were not in the same place at the same time. Coughlin testified that sometimes Graf calls him names and described an October 2018 incident during which Graf called him a "pussy ass bitch" in a public parking lot while Coughlin was putting his stepchildren and child in the car. Coughlin testified he and Graf disagreed about which church's CCD program Bird should attend with Coughlin favoring his parish and Graf favoring her parish. Graf took Bird to Coughlin's parish for CCD only after Coughlin filed a contempt action against her. Coughlin also described another situation where Bird had attempted to hurt himself while in Graf's care. After being notified by the doctor's office of the situation, he contacted Graf but she would not let him speak with Bird. Coughlin requested that police perform a wellness check on Bird, which determined that Bird was "ok." Coughlin testified that when Bird returned to his custody, he took Bird to Boys Town for an evaluation to determine if he needed ongoing therapy, which the evaluation determined was not needed.

Coughlin also testified that Graf refused to pay daycare expenses that were necessarily incurred during her parenting time on Wednesday mornings before school started. Coughlin also testified that Graf would deny him parenting time if he did not personally pick up Bird. Coughlin testified that on one weekend in 2017, he was working in Council Bluffs, Iowa, performing a military drill during his parenting time. Coughlin testified that, because his parenting time started at 8 a. m., he sent Nina to pick up Bird, but she was not allowed to leave with him forcing Coughlin

to request leave from his military post to pick up Bird. Coughlin then read from one of the exhibits containing a 2017 text message sent from Graf to Coughlin stating:

> Nina should never be picking him up because you are out of town and not available. He should be with me. First right of refusal is something that is in all custody orders and will be surely entered into ours. Also, on a separate note, it is dark outside. Bird will not be sent out in the dark for anything, it's not safe.

Although Graf's text message references a right of refusal, Coughlin testified that a right of first refusal was not included in the court order, and that Bird spends a substantial amount of time with Graf's parents but Coughlin has never sought a right of refusal. Coughlin further testified that when he picks up Bird from Graf's parent's residence, her parents insist Coughlin come to the door to get Bird instead of sending him out to Coughlin's car. Coughlin testified Graf's parents use that interaction to belittle him. Coughlin testified Graf has changed residences approximately four times between February 2017 and April 2018. Coughlin also testified that at one point Graf did not provide a bed for Bird. Coughlin also testified he and Graf disagreed about medical treatment for Bird, and Coughlin's attorney tried to introduce evidence along these lines but was prohibited by the court based on relevance. Instead, Coughlin's attorney made an offer of proof outlining disagreements between the parties about Bird's therapist, optometrist, primary care physician, and dentist.

MALLORI GRAF

Graf testified she shares a residence with her roommates, Liz and Evan, and their two children, one of whom is attending college and stays at the residence only on the weekends. When asked how often her roommates provide child care on the weekends, Graf replied:

> It just depends on if I'm working. We don't really consider it child care because we all take care of each other's kids. I don't work very much on the weekends. I work Saturdays every once in a while. But if he's at home with my roommates, he's also at home in his own home, with his family[.]

Graf testified she is employed by the Salvation Army as an intensive community care specialist case manager working Sunday through Wednesday but also picks up shifts as a waitress Thursday and Friday over lunch and every other Saturday when Bird is at parenting time with Coughlin.

Graf testified she has experienced financial difficulties. She explained that during the summer of 2017 her car was repossessed because she did not have enough money to pay her bills. Graf testified that, for a period of time, Bird resided with her parents because her living arrangements were uncertain. Graf testified Bird frequently goes to her parents' house and spends time with his aunts and uncles who are close to his age. Graf testified that when Bird stays overnight with her parents, he usually sleeps in Graf's younger brother's room.

Graf testified that her suicide attempt in the summer of 2016 led to the November 2016 modification order, which required her to provide updates to Coughlin every three months over a two year period concerning her therapeutic condition. Graf testified she did not have a therapist

between November 2017 and December 2018. Graf acknowledged that to comply with the court order, she would have needed a treating therapist or doctor, but she did not have the means to pay for those services until December 2018 at which point she began seeing a therapist. Graf testified she has been diagnosed with "major depressive," anxiety disorders, and posttraumatic stress disorder (PTSD) which she partially attributed to Coughlin. Graf testified her mental health treatment includes medication and working with a therapist and a psychiatrist. Although Graf admitted that she had accused Coughlin of harming Bird, she also acknowledged that she was not aware of a situation where Coughlin had harmed Bird. She also admitted that she and Coughlin had disagreements regarding Bird's therapist, which church Bird should attend, and Bird's extracurricular activities, specifically baseball, because Coughlin sent her a text message saying when baseball would begin without first discussing which team Bird would play for or which days would work for her schedule. Although Graf testified that she did not take Bird to baseball games during her parenting time last year, Bird attended every baseball game this year. Graf testified that she speaks kindly to Coughlin with the exception of the night she cursed at him while he was putting his children in his car. Graf testified that she would like to get along better and "start a new clean slate" with Coughlin and Nina for Bird's benefit.

DISTRICT COURT ORDER

The district court's May 1, 2019, order provided that a material and substantial change had occurred warranting a modification of the decree. The order provided, in relevant part:

[Coughlin] shall be awarded the Sole Legal Custody of the parties' minor child. [Coughlin] and [Graf] shall continue to have the Joint Physical Custody of the parties' minor child. The parenting time shall be modified such that [Graf]'s parenting time shall begin on Wednesday at the time school begins and if school is not in session her parenting time shall begin at 8:00 a.m. The Fourth of July Holiday shall be modified such that [Coughlin] shall have the minor child in odd numbered years and [Graf] shall have the minor child in even numbered years. The Summer visitation shall be modified in that each party shall be required to designate their Summer parenting time no later than March of each year. All other provision[s] (sic) not specifically modified from the previous Court's Orders shall remain in full force and effect.

ASSIGNMENTS OF ERROR

Coughlin contends, restated and renumbered, that the district court erred in (1) excluding testimony regarding medical disagreements between the parties and (2) failing to award him sole physical custody of Bird.

STANDARD OF REVIEW

In a filiation proceeding, questions concerning child custody determinations are reviewed on appeal de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of an abuse of discretion. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019).

ANALYSIS

EXCLUSION OF TESTIMONY

Coughlin first contends the district court erred in excluding testimony regarding medical disagreements between the parties. Coughlin argues the contentious nature of the parties' disagreements over their child's medical needs was relevant for the court's determination of physical custody.

When deciding evidentiary issues, the Nebraska Supreme Court has explained:

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by these rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. The exercise of judicial discretion is implicit in determining the relevance of evidence, and we will not reverse a trial court's decision regarding relevance absent an abuse of discretion. A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.

*Salem Grain Co. v. City of Falls City*, 302 Neb. 548, 576-77, 924 N.W.2d 678, 698-99 (2019).

The Parenting Act, as adopted by the Nebraska Legislature, explains that "the concept of child custody encompasses both 'legal custody and physical custody.' 'Legal custody' focuses entirely on decisionmaking authority and is defined as 'the authority and responsibility for making fundamental decisions regarding the child's welfare, including choices regarding education and health.'" *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. at 945-46, 932 N.W.2d at 703.

At trial, when Coughlin's attorney proceeded with a line of questioning regarding disagreements over Bird's medical needs, Graf's attorney objected and the court ruled that it was not relevant because Coughlin has "sole decision making on the medical." Coughlin's attorney made an offer of proof in the form of an exhibit containing a series of text messages from March 2017 to October 2018 between Coughlin and Graf highlighting the contentious nature of these medical disputes. The medical disputes mostly involved the parties' disagreements regarding who should be Bird's therapist, dentist, and optometrist.

The specific evidence that Coughlin attempted to elicit, but was denied, directly related to Coughlin and Graf's attempts to make fundamental decisions regarding Bird's welfare in the past. Stated differently, the excluded evidence struck right at the heart of Coughlin and Graf's prior attempt to exercise their rights to joint legal custody. But under the prior order, even though the parties were granted joint legal custody, Coughlin had been granted the right of final determination if the parties did not agree. Further, in modifying the order, the district court granted Coughlin sole legal custody governing like decisions in the future. Taken together, Coughlin certainly cannot be heard to say that the exclusion of any further evidence governing disagreements over Bird's medical welfare prejudiced him in any way, at least in relation to the issue of joint legal custody to which the issue of these disagreements more directly relates.

Although the issue of Coughlin and Graf's disagreements over Bird's medical welfare could have some impact on issues pertaining to Bird's physical custody as we more fully articulate in the next section of this opinion; we cannot say that the specific evidence excluded by the trial

court as depicted in Coughlin's offer of proof, which relates more directly to the issue of joint legal custody, was an "untenable" ruling, or denied Coughlin of a substantial right in connection with the issue of physical custody. This assignment fails.

PHYSICAL CUSTODY

Coughlin's next assigned error is that the district court erred in failing to award him sole physical custody of Bird. Coughlin argues the court abused its discretion by placing too much emphasis on Bird's academic success instead of considering the turmoil that exists between the parties.

In *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019), the Nebraska Supreme Court recently restated the distinctions between legal custody and physical custody.

> "Physical custody" is defined by the Parenting Act as "authority and responsibility regarding the child's place of residence and the exertion of continuous parenting time for significant periods of time." As such, although the Parenting Act does not speak in terms of "sole" or "primary" physical custody, it contemplates that an award of physical custody will determine the child's primary residence and identify the parent who will exert "significant" and "continuous" parenting time over the child.

*Id.* at 946, 932 N.W.2d at 703.

We further note that in *State on behalf of Kaaden S.,* the Nebraska Supreme Court disapproved of the blanket proposition that joint custody arrangements are generally disfavored and should be reserved for rare or special cases. Specifically, the court held that joint custody "is neither favored nor disfavored under Nebraska law." *Id.* at 955, 932 N.W.2d at 708. When custody of a minor child is an issue, child custody is determined by parental fitness and the child's best interests. See, *Maska v. Maska*, 274 Neb. 629, 742 N.W.2d 492 (2007); *Spence v. Bush,* 13 Neb. App. 890, 703 N.W.2d 606 (2005) (paternity proceeding). When both parents are found to be fit, the inquiry for the court is the best interests of the children. *Maska, supra*.

When determining the best interests of the child in deciding custody, a court must consider, at a minimum: (1) the relationship of the minor child to each parent prior to the commencement of the action; (2) the desires and wishes of a sufficiently mature child, if based on sound reasoning; (3) the general health, welfare, and social behavior of the child; (4) credible evidence of abuse inflicted on any family or household member; and (5) credible evidence of child abuse or neglect or domestic intimate partner abuse. *State on behalf of Kaaden S. v. Jeffery T.*, 303 Neb. 933, 932 N.W.2d 692 (2019). See Neb. Rev. Stat. § 43-2923(6) (Reissue 2016).

In addition to these statutory "best interests" factors, a court making a child custody determination may consider matters such as the moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; and the parental capacity to provide physical care and to satisfy the educational needs of the child. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). Against

that framework, we must now perform a de novo review of the record in order to determine whether the district court abused its discretion in finding that a joint physical custody arrangement remained appropriate in the instant case.

The court ultimately determined joint physical custody was in the best interests of Bird. In making its decision, the court heard evidence and argument from the parties regarding Bird's well-being and stability in his life. Additionally, the court considered the testimony about Bird's progress in school, which was attributable to both of his parents and extended family. Coughlin explained that Bird's academic performance, as shown by his report cards, indicated he was doing "[g]reat. He's proficient or advanced in all aspects, and especially advanced in mathematics." Additionally, Bird was participating in extracurricular activities including CCD and baseball. He attended CCD at the same parish as his stepsiblings and was on the same baseball team as his stepbrother and "love[s] it."

Coughlin discussed the close relationship Bird experiences with his stepsiblings, explaining they get along "great" and "play just about the whole time that they're together" playing on the hoverboard, bike, scooters, games, and in the snow. Bird has his own room at Coughlin's house, but on some nights, he prefers to stay with his stepbrother in the same room. Bird assists in changing his younger half brother's diapers and plays with his younger half brother.

In addition to Coughlin's testimony, Graf described the environment at her residence and what Bird encounters when he is present. Graf explained she shares a residence with her roommates, Liz and Evan, and their two children, one of whom is attending college and stays at the residence only on the weekends. When asked how often her roommates provide child care on the weekends, Graf replied:

> It just depends on if I'm working. We don't really consider it child care because we all take care of each other's kids. I don't work very much on the weekends. I work Saturdays every once in a while. But if he's at home with my roommates, he's also at home in his own home, with his family[.]

Graf further testified that her parents care for Bird, and he frequently goes to their house. When he stays overnight with them, he usually sleeps in Graf's younger brother's room. Like Coughlin, Graf's testimony establishes that Bird enjoys a good relationship with Graf and her family and is well-adjusted under the current joint physical custody arrangement.

Testimony established Bird enjoys a continuing relationship with extended family members of both of his parents. For instance, Bird has gone on vacation to Colorado with Graf's parents and on another occasion has traveled to Las Vegas with Coughlin's parents. After our de novo review of the record, there is no indication the court failed to consider the best interest factors when concluding that joint physical custody served Bird's best interests. The record reflects both Coughlin and Graf have provided Bird with loving environments which meet Bird's needs and that Bird is thriving. Bird's best interests are met through a joint physical custody arrangement that fosters a relationship between him and both of his parents and their extended families. Based upon our de novo review, we find the district court did not abuse its discretion in continuing the award of joint physical custody.

CONCLUSION

Based upon our de novo review, we find the court did not err in refusing to admit testimony governing certain disagreements of the parties and that Bird's best interests require the continuation of a joint physical custody arrangement. Thus, the order of the court is affirmed.

AFFIRMED.